F I L E D
United States Court of Appeals
Tenth Circuit

AUG 20 1997

PATRICK FISHER
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 96-2078

JAMES MANUEL ROMERO,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D. Ct. No. CR-94-694-JC)**

Alonzo J. Padilla, Assistant Federal Public Defender, Albuquerque, New Mexico, appearing for Defendant-Appellant.

Louis E. Valencia, Assistant U.S. Attorney (John J. Kelley, U.S. Attorney, with him on the brief), Albuquerque, New Mexico, appearing for Plaintiff-Appellee.

Before TACHA, HENRY, and LUCERO, Circuit Judges.

TACHA, Circuit Judge.

Defendant James Manuel Romero appeals his conviction and sentence resulting from his participation in a carjacking and robbery. On appeal, Romero contends that: (1) the government presented insufficient evidence that he intended to cause death or serious bodily harm as required by the federal carjacking statute; (2) the prosecutor's closing arguments and the jury instructions improperly informed the jury that they could convict Romero of carjacking based on conditional intent; (3) Congress exceeded its power under the Commerce Clause in enacting the federal carjacking statute; (4) the government presented insufficient evidence that the robbery affected interstate commerce to justify federal prosecution under the Hobbs Act; (5) Romero's prior conviction for conveying a weapon in a federal prison is not a "violent felony" under the Armed Career Criminal Act; (6) Romero's prior conviction for conveying a weapon in a federal prison is not a "serious violent felony" under the mandatory life imprisonment statute ("Three Strikes law"); (7) one of Romero's convictions for using or carrying a firearm during and in relation to a crime of violence does not constitute a "second or subsequent conviction;" and (8) the district court failed to make specific factual findings regarding Romero's objections to findings in the presentence report. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We remand for the district court to make specific factual findings regarding Romero's objections to the presentence report and affirm as to the remaining issues.

## BACKGROUND

The charges against Romero arose from his participation in a carjacking and robbery that took place near Taos, New Mexico. We view the evidence, together with all reasonable inferences to be drawn therefrom, in the light most favorable to the government. United States v. Zeigler, 19 F.3d 486, 488 (10th Cir.), cert. denied, 513 U.S. 1003 (1994).

On the evening of October 30, 1994, Michael Ninneman, his wife Patricia, and their handicapped daughter Vanessa arrived at their home in an isolated area approximately five miles from Taos. As Mr. and Mrs. Ninneman exited their vehicle and prepared to go into the house, two screaming masked men ran around the side of the house and confronted the Ninnemans. Each man had a gun. One of the men wore a lighter mask and was later identified as the defendant in this case, James Manuel Romero.

One of the masked men hit Mr. Ninneman on the head and knocked him to the ground. At gun point, the men ordered Mr. Ninneman to open the door to the house. Upon entering the house, the armed men began asking, "Where is the safe? We know you have the money." Tr. at 80. The men ordered Mr. Ninneman to lay face down in the entryway and do what he was told or the men would "blow a hole in . . . [his] head." Tr. at 102. As Romero stood watch over Mr. Ninneman, his accomplice dragged Mrs. Ninneman to the house, tied her up, and

placed a pillowcase over her head. The darker masked man then took Mr. Ninneman's glasses, tied him up, and draped a white cloth over his head.

The darker masked man began rummaging through the house looking for money and a safe. Meanwhile, Romero placed his knee on Mr. Ninneman's back and held a gun to his head. Romero told Mr. Ninneman not to do anything or Romero would "blow a hole in [his] head." Tr. at 105. Demanding to know the location of the safe, Romero hit Mr. Ninneman on the side of the head with his gun, kicked him in the chin, split his chin open, and tried kicking him in the groin. Mr. Ninneman told Romero that if they wanted money, the men would have to go to his restaurant in Taos, Michael's Kitchen. Mr. Ninneman, however, pleaded that the men bring his handicapped daughter into the house before going to the restaurant. They agreed.

The men placed Mr. Ninneman in the back seat of the Ninneman's Chevy Suburban and told him that if he lay face-down and kept quiet he would not be hurt. Shortly after 8:30 p.m., the masked men and Mr. Ninneman arrived at Michael's Kitchen. Scheduled to be closed for the next six weeks, the restaurant was not open for customers. About ten employees, however, were working inside.

The darker masked man entered the restaurant first and screamed at the employees to get down on the floor. Romero, holding a gun to Mr. Ninneman's head, led him into the restaurant. As Romero held the employees at gunpoint, the

darker masked man led Mr. Ninneman to the office. He forced Mr. Ninneman to unlock the office door and open the safe, where he took over $10,000 in cash and an unknown number of checks. He then ran with the money out the back door of the restaurant.

Meanwhile, the Taos Police Department received a call that an armed robbery was in progress at Michael's Kitchen. Officer Ricardo Medina and two other officers responded to the call. Officer Medina approached the restaurant from the back alley. Hiding behind two dumpsters, he observed Romero standing on a platform behind the restaurant and shouted, "Police Officer. Drop your weapon." Romero looked around and pointed his gun in the officer's direction. Again, Officer Medina ordered Romero to drop his weapon. Romero jumped off the platform and ran toward the Ninneman's Chevy Suburban. For a third time, Officer Medina ordered Romero to stop and drop his weapon. Romero turned around and fired a shot in the officer's direction. In response, Officer Medina fired his shotgun and wounded Romero. Romero turned around and ran toward the Chevy Suburban, which was then spinning its tires and accelerating forward. Romero appeared to hit the side of the vehicle and fall to the ground.

As the vehicle sped out of the area, Romero rose to his feet and ran into a nearby wooded area. Shortly thereafter, Officer Medina found a .357 Magnum revolver with one spent cartridge and five live rounds where Romero fell.

Later than night, Officer Medina found Romero in a local cemetery bleeding profusely from his chest and right arm. Law enforcement officers found the Chevy Suburban abandoned in an alley east of Michael's Kitchen. Romero's accomplice was never found.

The government indicted Romero on seven counts: conspiracy to commit carjacking and robbery and extortion affecting interstate commerce in violation of 18 U.S.C. §§ 2119 and 1951(a) (Count I), carjacking in violation of 18 U.S.C. §§ 2 and 2119 (Count II), using or carrying a firearm during and in relation to carjacking in violation of 18 U.S.C. § 924(c)(1) (Count III), interference with commerce by robbery and extortion in violation of 18 U.S.C. §§ 2 and 1951(a) (Count IV), using and carrying a firearm during and in relation to interference with commerce by robbery and extortion in violation of 18 U.S.C. § 924(c)(1) (Count V), receipt of a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924(a)(2) (Count VI); and being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count VII). A jury convicted Romero on all counts.

On March 13, 1996, the district court sentenced Romero to three concurrent life imprisonment terms on Counts I, II, and IV under the "Three Strikes" provision of 18 U.S.C. § 3559(c)(1)(F). The court also imposed a sentence of 120 months on Count VI to run concurrently with Counts I, II, and IV; 327 months on

Count VII to run concurrently with Counts I, II, IV, and VI; 60 months on Count

III to run consecutively to Counts I, II, IV, VI and VII; and 240 months on Count

V to run consecutively to all the other counts.  Romero's total sentence amounted

to life imprisonment plus twenty-five years.

## I.    CONDITIONAL INTENT: "INTENT TO CAUSE DEATH OR SERIOUS BODILY HARM"

Romero argues that his carjacking conviction cannot stand because the

government presented insufficient evidence to establish that Romero had the

requisite intent to commit the offense.  Romero contends that for a jury to find

him guilty of carjacking, the statute requires proof beyond a reasonable doubt that

he intended to cause death or serious bodily injury whether or not the victim

agreed to relinquish his car.  In contrast, the government maintains that the

"intent to cause death or serious bodily injury" element of the carjacking statute is

satisfied if the government is able to show that Romero intended to cause death or

serious bodily injury if the victim refused to relinquish his or her car.

Conditional intent, the government asserts, is enough.

We review the district court's interpretation of a criminal statute de novo.[1]

United States v. Rothhammer, 64 F.3d 554, 557 (10th Cir. 1995).  In interpreting

---

[1] Romero frames his conditional intent argument as a sufficiency of the evidence issue and as an improper closing argument and jury instruction issue.  We conclude, however, that these issues are more properly viewed as ones involving statutory interpretation.

a statute, we begin with the plain language of the statute itself. <u>United States v.</u>

<u>Green</u>, 967 F.2d 459, 461 (10th Cir. 1992). If the terms of the statute are

unambiguous, our inquiry ends. <u>Id.</u>

In October of 1994, at the time of the incident in this case, the federal

carjacking statute provided:

> Whoever, <u>with the intent to cause death or serious bodily harm takes</u> a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another <u>by force and violence or by intimidation</u>, or attempts to do so, shall—
> (1) be fined under this title or imprisoned not more than 15 years, or both,
> (2) if serious bodily injury . . . results, be fined under this title or imprisoned not more than 25 years, or both, and
> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

18 U.S.C. § 2119 (1994) (emphasis added).

Section 2119 requires that to be convicted of a carjacking offense, the

defendant must act "with intent to cause death or serious bodily harm." As a

general rule, "conditional intent is still intent." <u>United States v. Arrellano</u>, 812

F.2d 1209, 1211 n.2 (9th Cir.), <u>opinion corrected by</u>, 835 F.2d 235 (1987).

"Where a crime requires the defendant to have a specified intention, he has the

required intention although it is a conditional intention, 'unless the condition

negatives the harm or evil sought to be prevented by the law defining the

offense.'" WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL

- 8 -

LAW § 3.5(d), at 313 (1986) (citing MODEL PENAL CODE § 2.02(6)).

Applying this general rule to the carjacking statute, the Third Circuit in United

States v. Anderson, 108 F.3d 478, 484-85 (3d Cir. 1997), petition for cert. filed,

___U.S.L.W.___ (U.S. June 3, 1997) (No. 96-9338), concluded that conditional

intent satisfies the federal carjacking statute's intent requirement.  The court

explained:

> The fact that a defendant is able to achieve the goal of obtaining the
> car without resorting to the infliction of death or serious bodily harm
> obviously does not negate the intent to cause such harm in order to
> obtain the car.  Whether the harm sought to be prevented by the
> statute is the theft of cars, the threat to cause death or serious bodily
> harm in order to obtain another's car, or the causing of death or
> serious bodily harm, the intervening event of the victim giving up his
> or her car in order to avoid serious injury in no way negatives the
> harm sought to be prevented by the statute.  Indeed, the fact that the
> victim opted to turn over his or her car in the hope of avoiding
> serious harm does not alter the fact that the defendant possessed an
> intent to cause death or serious bodily harm in order to obtain the
> car.

Id.; see also United States v. Holloway, 921 F. Supp. 155, 160 (E.D.N.Y. 1996);

United States v. Norwood, 948 F. Supp. 374, 377 (D.N.J. 1996).

In addition to requiring an "intent to cause death or seriously bodily harm,"

section 2119 also requires that the defendant "take[] a motor vehicle . . . by force

or by intimidation."  Some federal courts have construed section 2119's "intent to

cause serious bodily harm" requirement as requiring "something more than a

threat or mere conditional intent to harm."  United States v. Randolph, 93 F.3d

656, 665 (9th Cir. 1996); United States. v. Craft, No. CRIM A. 96-376, 1996 WL 745527, at *4 (E.D. Pa. Dec 23, 1996).  The Ninth Circuit in Randolph reasoned that the "tak[ing] . . . by force or intimidation" element requires force or intimidation.  Randolph, 93 F.3d at 665.  A threat satisfies the intimidation prong of the "taking" element.  Id.  The court, however, noted that the statute additionally requires proof of an intent to cause death or serious bodily harm.  Id.  Thus, the court concluded that "[t]o construe a mere threat as conclusive evidence of the intent element would be to eliminate that additional intent element."  Id.  As such, the Ninth Circuit held that the plain language of the statute indicates that the "mere conditional intent to harm a victim if she resists is simply not enough to satisfy § 2119's . . . intent requirement."  Id.

We disagree that the "tak[ing] . . . by force or intimidation" element and the "intent to cause death or serious bodily harm" element constitute two separate and distinct intent requirements.  Instead, the plain language of the statute indicates that the "tak[ing] . . . by force or intimidation" element comprises the actus reus of the crime and the "intent to cause death or serious bodily harm" element constitutes the mens rea of the crime.

In our view, the Ninth Circuit's conclusion in Randolph directly contravenes the plain language of the statute.  "It is apparent . . . that Congress did not intend for death or serious bodily injury to be a prerequisite to every

carjacking conviction, since Congress has provided for enhanced penalties, when carjacking does, in fact, result in death or serious bodily injury." Anderson, 108 F.3d at 483. Moreover, as the court in Holloway explained in criticizing such a view:

> Only those carjackers who intend not only to rob cars, but also to murder or seriously injure another, could be prosecuted. A person who intends to find a Mercedes Benz, shoot the owner and take the car could be prosecuted. A person who intends to find a Mercedes Benz and shoot the owner only if she refuses to give up her car could not, at least if the plan succeeds and the car is taken without the need to fire. This would be an odd result. The statute would no longer prohibit the very crime it was enacted to address except in those unusual circumstances when carjackers also intended to commit another crime—murder or a serious assault.

Holloway, 921 F. Supp. at 159. We agree and hold that a defendant's conditional "intent to cause death or serious bodily harm" satisfies the specific intent requirement of section 2119.[2]

## II. COMMERCE CLAUSE CHALLENGE TO THE FEDERAL CARJACKING STATUTE

Romero asserts that Congress exceeded its power under the Commerce Clause in enacting 18 U.S.C. § 2119, the federal carjacking statute. He contends

---

[2] Romero admits that the government presented sufficient evidence to prove that he intended to cause death or serious bodily harm if the Ninnemans resisted. Given our holding and Romero's admission, Romero's first two issues on appeal are resolved. The government presented sufficient evidence of Romero's intent to cause death or serious bodily harm, and the prosecutor's closing statements and the jury instructions were not improper.

- 11 -

that the statute is unconstitutional under the principles set forth in <u>United States</u> <u>v. Lopez</u>, 115 S. Ct. 1624 (1995).

In <u>United States v. Overstreet</u>, 40 F.3d 1090, 1092-93 (10th Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 1970 (1995), a pre-<u>Lopez</u> decision, we rejected a Commerce Clause challenge to the federal carjacking statute. We reaffirmed that holding in light of <u>Lopez</u> in <u>United States v. Carolina</u>, 61 F.3d 917, 1995 WL 422862, *1-2 (10th Cir. 1995). Nothing in the Supreme Court's Commerce Clause jurisprudence that convinces us to alter our decisions in <u>Overstreet</u> and <u>Carolina</u>. Thus, we reject Romero's constitutional challenge to the federal carjacking statute.[3]

## III. FEDERAL JURISDICTION UNDER THE HOBBS ACT

Romero challenges the sufficiency of the evidence to support federal jurisdiction under the Hobbs Act. He contends the government failed to prove that the robbery of Michael's Kitchen had any effect on interstate commerce. In particular, he argues that under <u>United States v. Lopez</u>, 115 S. Ct. 1624 (1995), the government must establish "that the type of robbery committed was likely to

---

[3] Other circuits have similarly rejected Commerce Clause challenges to the federal carjacking statute. <u>See</u> <u>United States v. McHenry</u>, 97 F.3d 125, 126 (6th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 992 (1997); <u>United States v. Coleman</u>, 78 F.3d 154, 160 (5th Cir.), <u>cert. denied</u>, 117 S. Ct. 230 (1996); <u>United States v. Hutchinson</u>, 75 F.3d 626, 627 (11th Cir.), <u>cert. denied</u>, 117 S. Ct. 241 (1996); <u>United States v. Bishop</u>, 66 F.3d 569, 585 (3d Cir.), <u>cert. denied</u>, 116 S. Ct. 681 (1995); <u>United States v. Robinson</u>, 62 F.3d 234, 236 (8th Cir. 1995); <u>United States v. Oliver</u>, 60 F.3d 547, 550 (9th Cir. 1995).

be repeated and that this repetition would substantially affect commerce." App't Br., at 37. He asserts that because the robbery did not affect the amount of business conducted by Michael's Kitchen and the amount of out-of-state supplies that the restaurant ordered, his convictions under the Hobbs Act cannot stand.

The Hobbs Act provides for the punishment of anyone who "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do." 18 U.S.C. § 1951(a). The statute broadly defines the term "commerce" to encompass "all commerce between any point in a State, . . . and any point outside thereof . . . and all other commerce over which the United States has jurisdiction." 18 U.S.C. § 1951(b)(3).

Hobbs Act jurisdiction is based on Congress's broad authority to regulate interstate commerce. See Stirone v. United States, 361 U.S. 212, 215 (1960). In accordance with the plain language of the statute, we have held that held that the jurisdictional predicate of the Hobbs Act can be satisfied by a showing of "any de minimis effect on interstate commerce." United States v. Bruce, 78 F.3d 1506, 1509 (10th Cir.), cert. denied, 117 S. Ct. 149 (1996); United States v. Bolton, 68 F.3d 396, 398-99 (10th Cir. 1995), cert. denied, 116 S. Ct. 966 (1996); United States v. Zeigler, 19 F.3d 486, 489 (10th Cir. 1994). Moreover, we have concluded that a construction requiring only a de minimis effect on interstate

- 13 -

commerce in individual instances is consistent with Lopez.  Bruce, 78 F.3d at

1509; Bolton, 68 F.3d at 399.

To establish the requisite de minimis effect on commerce, the government

need only produce evidence establishing that the assets of a business engaged in

interstate commerce were depleted during the commission of the crime.  Zeigler,

19 F.3d at 489.  Under the "depletion of assets" theory,

> commerce is affected when an enterprise, which either is actively
> engaged in interstate commerce or customarily purchases items in
> interstate commerce, has its assets depleted . . . , thereby curtailing
> the victim's potential as a purchaser of such goods.

Bolton, 68 F.3d at 398; Zeigler, 19 F.3d at 489-90.

In this case, the government established that Romero and his accomplice

stole over $10,000 in cash and checks from Michael's Kitchen.  As a result, Mr.

Ninneman was forced to borrow $11,000 from a bank in order to re-open his

restaurant.  The restaurant was also late in paying many of its main suppliers,

such as Kraft Foods, located in Albuquerque, New Mexico (who sends french

fries from Washington, frozen corn from Oregon, apple pie and turkey from

Michigan, hamburger from Minnesota, chicken from Arkansas, blueberry pie from

Illinois, and parsley from Iowa).  The government also proved that Michael's

Kitchen serves 1400-1600 people per day, many of whom are from out of state.

Under such circumstances, we hold that the government presented sufficient

evidence to establish that the robbery of Michael's Kitchen "obstructed delayed or affected interstate commerce."

## IV.    CONVEYING A WEAPON AS A "VIOLENT FELONY" UNDER THE ARMED CAREER CRIMINAL ACT

The Armed Career Criminal Act ("ACCA") authorizes an enhanced prison term for a defendant who is (1) convicted of being a felon in possession of a firearm and (2) has "three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another."  18 U.S.C. § 924(e)(1).  In sentencing Romero, the district court concluded that Romero had three prior "violent felonies" within the meaning of section 924(e)(1).  First, on January 31, 1974, a jury convicted Romero of second degree murder.  Second, on June 12, 1975, Romero was convicted of forcibly assaulting a law enforcement officer.  Third, on December 4, 1981, Romero pleaded guilty to conveying a weapon in federal prison in violation of 18 U.S.C. § 1791 (1984).  The district court thus sentenced Romero as an armed career offender under the ACCA.  See U.S.S.G. § 4B1.4(a).

On appeal, Romero argues that his prior conviction for conveying a weapon in a federal prison does not constitute a "violent felony" under section 924(e). We review de novo a sentence enhancement imposed pursuant to section 924(e). United States v. Hill, 53 F.3d 1151, 1153 (10th Cir.) (en banc), cert. denied, 116 S. Ct. 258 (1995).  The government carries the burden of proving by a

preponderance of the evidence that an enhancement is appropriate.  United States

v. Green, 55 F.3d 1513, 1515 (10th Cir.), cert. denied, 116 S. Ct. 324 (1995).

The ACCA defines a violent felony as:

> [A]ny crime punishable by imprisonment for a term exceeding one
> year . . . that—
> (i) has as an element the use, attempted use, or threatened use of
> physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or
> otherwise involves conduct that presents a serious potential risk of
> physical injury to another.

18 U.S.C. § 924(e)(2)(B) (emphasis added).  In determining whether Romero's

conveying conviction is a "violent felony" under the ACCA, we use a "formal

categorical approach, looking only to the statutory definitions of the prior

offenses, and not to the particular facts underlying those convictions."  Taylor v.

United States, 495 U.S. 575, 600 (1996); United States v. Spring, 80 F.3d 1450,

1461 (10th Cir.), cert. denied, 117 S. Ct. 385 (1996).

At the time of Romero's 1981 conveying conviction, the relevant statute

provided:

> Whoever conveys into such institution, or from place to place
> therein, any firearm, weapon, explosive, or any lethal or poisonous
> gas, or any other substance or thing designed to kill, injure or disable
> any officer, agent, employee, or inmate thereof, or conspires so to
> do—
> Shall be imprisoned not more than ten years.

18 U.S.C. § 1791 (1984) (emphasis added).  Based on the statutory definition of

Romero's conveying conviction, we hold that such an offense inherently presents

- 16 -

a serious potential risk of physical injury to another. "It is worth emphasizing that § 924(e)(2)(B)(ii) only requires that there be a serious 'potential' risk of injury; it does not require proof that any actual injury occurred, nor should it under a categorical approach." United States v. Phelps, 17 F.3d 1334, 1342 (10th Cir. 1994). With this in mind, we agree with the Ninth Circuit:

> In a prison setting, the possession by an inmate of a deadly weapon indeed presents a serious potential risk of physical injury to another. The felon who unlawfully possesses a firearm, although disobeying the law, may have a legitimate use intended for the firearm, such as target shooting or collecting. By contrast, we fail to discover a similarly "innocent" purpose behind the possession of a deadly weapon by a prison inmate. The confines of prison preclude any recreational uses for a deadly weapon and render its possession a serious threat to the safety of others. By its nature, therefore, the possession of a deadly weapon by a prison inmate presents "a serious potential risk of physical injury to another."

United States v. Young, 990 F.2d 469, 472 (9th Cir. 1993) (concluding that a conveying offense is a "crime of violence" under U.S.S.G. § 4B1.2). Thus, we hold that the district court did not err in concluding that Romero's 1981 conveying offense was a "violent felony" under the ACCA.

V.    CONVEYING A WEAPON AS A "SERIOUS VIOLENT FELONY" UNDER THE "THREE STRIKES" LAW

In 1994, Congress enacted the Violent Crime Control and Law Enforcement Act which included a mandatory life imprisonment provision ("Three Strikes law"). Pub. L. No. 103-322, Tit. VII, § 70001, 108 Stat. 1796 (1994) (codified at 18 U.S.C. § 3559(c)(1)). Under that statute, the district court must sentence to

- 17 -

life in prison any defendant who (1) is convicted in federal court of a "serious violent felony" and (2) "has been convicted," on prior separate occasions, of two or more prior "serious violent felonies" in federal or state courts. 18 U.S.C. § 3559(c)(1)(A). Under the Three Strikes law, the term "serious violent felony" includes:

> (ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense.

18 U.S.C. § 3559(c)(2)(F)(ii). Even if a crime meets this definition, however, the crime does not necessarily constitute a "strike" against the defendant. The statute provides that a crime is a "nonqualifying felony" if the defendant establishes, by clear and convincing evidence, that:

> (i) no firearm or other dangerous weapon was used in the offense and no threat of use of a firearm or other dangerous weapon was involved in the offense; and
> (ii) the offense did not result in death or serious bodily injury (as defined in section 1365) to any person.

18 U.S.C. § 3559(c)(3)(A).

In this case, the district court concluded that Romero had two prior "serious violent felony" convictions—the 1974 second degree murder conviction and the 1981 conveying conviction. In accordance with the Three Strikes law, the district court sentenced Romero to three concurrent life sentences for his convictions

relating to Count I (conspiracy), Count II (carjacking), and Count IV (interference with interstate commerce), all "serious violent felonies" within the meaning of the statute.

On appeal, Romero argues that his prior conviction for conveying a weapon in a federal prison does not constitute a "serious violent felony" under 18 U.S.C. § 3559(c). We review de novo a sentence enhancement imposed pursuant to section 3559(c). See Hill, 53 F.3d at 1153 (applying a de novo review to an enhancement under the ACCA).

## A.    The Ten-Year Maximum Penalty

Romero first asserts that his 1981 conveying conviction is not a serious violent felony because the offense does not meet the ten-year maximum penalty requirement. Romero acknowledges that in 1981, the maximum penalty for conveying a weapon in a federal prison was ten years. He argues, however, that the maximum penalty requirement should be measured at the time that Congress enacted the Three Strikes law. Because the maximum penalty for possessing a shank in 1994, when Congress enacted section 3559(c), was five years, Romero asserts that his conveying conviction fails to satisfy the ten-year maximum penalty requirement.

We disagree. In determining whether a felony satisfies the ten-year maximum penalty requirement of section 3559(c), the relevant inquiry is the

- 19 -

penalty at the time of the conviction, not in 1994 when Congress enacted the Three Strikes Law. Under the plain language of the statute, a strike occurs when a person "has been convicted . . . on separate prior occasions" of a serious violent felony. This language clearly indicates the time of conviction, not the time of the enactment of the Three Strikes Law, dictates what constitutes a "strike."

**B.      Substantial Risk of Physical Force and the Non-Qualifying Offense Exception**

Romero next asserts that his 1981 conveying conviction is not a serious violent felony because it is not an offense that "by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense." 18 U.S.C. § 3559(c)(2)(F)(ii). Romero urges us to adopt a categorical approach in this circuit and look only to the statutory elements of his conveying conviction to determine whether his conviction qualifies as a "serious violent felony" under section 3559(c). See Taylor v. United States, 495 U.S. 575, 600 (1990) (construing a "violent felony" under the Armed Career Criminal Act); United States v. Spring, 80 F.3d 1450, 1461 (10th Cir. 1996) (same). He contends that because the statutory elements of a conveying offense do not require a substantial risk of physical force, the substantial risk requirement is not satisfied. Even if Romero's conveying conviction is a "serious violent felony," he argues that it is a nonqualifying offense under section 3559(c)(3).

In response, the government argues that we should not look only to the statutory elements of the offense, but should ask, as the statute requires, whether the offense "by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense." 18 U.S.C. § 3559(c)(2)(F)(ii). The government asserts that Romero's conveying conviction satisfies this requirement. The government also argues that Romero did not seek to establish in the district court that his conveying conviction was a nonqualifying offense under section 3559(c)(3). Thus, the government contends that the record is insufficient to make this determination on appeal.

In determining whether a conviction constitutes a serious violent felony under section 3559(c), the statute indicates that we follow a two-step process. First, we must examine the statute itself to determine whether the offense contains as an "element the use, attempted use, or threatened use of physical force against the person" or whether the offense "by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense." If either of these tests are met, the burden shifts to the defendant to avoid a "strike" by establishing, under the clear and convincing evidence standard, that his conviction is a nonqualifying offense. As such, the defendant must place evidence in the record to establish that "no firearm or other dangerous weapon was used in the offense and no threat of use of a firearm or

other dangerous weapon was involved in the offense" and "the offense did not result in death or serious bodily injury." 18 U.S.C. § 3559(c)(3)(A).

We agree with the government that Romero's 1981 conveying conviction is a serious violent felony under section 3559(c). Although the conveying offense does not have "as an element the use, attempted use, or threatened use of force," it meets the second test contained in the statute—that is, "by its nature, [it] involves a substantial risk that physical force against the person of another may be used in the course of committing the offense." As we discussed above, there is no legitimate purpose for a prisoner to carry a weapon "designed to kill, injure or disable" another. On the contrary, the only reason to carry such a weapon is to use it to attack another or to deter an attack. Either way, the possession involves a substantial risk that physical force will be used while the weapon is in the possession of the prisoner. Thus, the burden shifts to Romero to prove that his conveying conviction is a nonqualifying offense under section 3559(c)(3).

We hold that Romero has failed to meet his burden of establishing that his conveying conviction was a nonqualifying offense. The only evidence introduced during the sentencing hearing relating to the 1981 conveying conviction was the Indictment and "Judgment and Probation/Commitment Order." Nothing in these documents establishes that Romero's conveying offense was a nonqualifying offense under section 3559(c). Thus, we hold that Romero's 1981 conveying

offense is a "serious violent felony" warranting a mandatory life sentence under section 3559(c).

## VI. "SECOND OR SUBSEQUENT CONVICTION" UNDER 18 U.S.C. § 924(C)(1)

Romero argues that the district court erred in imposing a consecutive sentence of twenty years imprisonment for Count V (using or carrying a firearm during and in relation a crime of violence) under 18 U.S.C. § 924(c)(1). In particular, Romero asserts that his conviction in Count V does not constitute a "second or subsequent conviction" under section 924(c)(1) because Count III, the first or predicate conviction, occured as part of the same criminal episode as Count V.

In United States v. Parra, 2 F.3d 1058 (10th Cir. 1993), we rejected a similar argument. In Parra, the defendants were convicted of two section 924(c)(1) violations for carrying or using a firearm during and in relation to two drug trafficking crimes—possession of cocaine with intent to distribute and conspiracy to possess cocaine with intent to distribute. Id. at 1071. Both predicate drug trafficking crimes in Parra arose from the same criminal episode. See id. at 1063. Relying on Deal v. United States, 508 U.S. 129 (1993), we affirmed the district court's imposition of a 20-year sentence for the second section 924(c)(1) conviction. Id. at 1071.

Under <u>Parra</u>, Romero's conviction on Count V for carrying or using a firearm during and relation to a crime of violence is a "second or subsequent conviction" with respect to his first conviction on Count III. We therefore affirm the district court's imposition of a twenty-year consecutive sentence on Romero's conviction under Count V.

## VII. DISTRICT COURT FINDINGS

In his last claim, Romero asserts that the district court erred in failing to make specific factual findings regarding his objections to the findings of the presentence report. After Romero's conviction, the probation office prepared an initial presentence report dated October 2, 1995. On November 28, 1995, Romero filed an "Objections to Presentence Report and Response to Enhancement Information." Following these objections, the probation office issued a revised presentence report, changing some of the initial findings and retaining others. At the sentencing hearing, Romero renewed his objections to the retained findings. In particular, Romero asserted that: (1) he did not intentionally shoot Officer Medina, (2) he should have received a downward departure for acceptance of responsibility, (3) the PSR should not refer to his 1970 tribal charges on the basis that he was not represented by counsel and that the records have been purged, (4) the PSR improperly referred to three misconduct reports during his first term in federal prison, (5) the PSR improperly mentioned his misconduct during his

incarceration in a federal institution for his 1973 second degree murder conviction, (6) the PSR improperly referred to his February 7, 1983 assault on another inmate with a sharpened instrument, (8) the PSR improperly contained criminal history about his brothers, (9) the PSR improperly referred to him as "criminally aggressive," and (10) the PSR improperly concluded that his recent behavior might be a "facade to cover some real underlying problems that resulted in his most recent conviction."

After Romero made these objections, the parties argued about the proper sentence for Romero. The court then stated:

> All right, the Court adopts the factual findings and guideline applications in the presentence report and finds there's no need for an evidentiary hearing as there are not disputed facts.

Tr. at 421. The court sentenced Romero accordingly.

> Under Federal Rule of Criminal Procedure 32(c)(1):

> At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence, and must rule on any unresolved objections to the presentence report. The court may, in its discretion, permit the parties to introduce testimony or other evidence on the objections. For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing.

Fed. R. Crim. P. 32(c)(1). We repeatedly have held that a district court may not satisfy its obligation by simply adopting the presentence report as its finding.

- 25 -

See, e.g., United States v. Henning, 77 F.3d 346, 349 (10th Cir. 1996). If the district court fails to comply with Rule 32, we must remand for the court to either make the necessary findings and attach them to the presentence report, or enter a declaration that it did not take the controverted matters into account in sentencing the defendant. United States v. Pedraza, 27 F.3d 1515, 1531 (10th Cir. 1994).

The record indicates that the district court did not make the findings or declaration required by Federal Rule of Criminal Procedure 32(c)(1). We therefore remand for the court to either make the necessary findings and attach them to the presentence report or enter a declaration that it did not take the controverted matters into account in sentencing the defendant.

## CONCLUSION

We REMAND Romero's case to the district court for findings pursuant to Fed. R. Crim. P. 32(c)(1). In all other respects, we AFFIRM.