**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 19 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

PIYARATH S. KAYARATH,

  Defendant-Appellant.

No. 97-3110
(D.C. No. 94-CR-10128-2)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Chief Judge, **MURPHY**, Circuit Judge, and **McWILLIAMS**, Senior Circuit Judge.

  Five young Asian-American males robbed the owners of the Mandarin Chinese Restaurant and Lounge in Wichita, Kansas, and in the course of the robbery shot and killed one of its co-owners, Barbara Sun. One of the five later indicted for participation in the robbery-murder was Piyarath S. Kayarath, identified in the indictment by that name, and also referred to therein as "a/k/a 'B'." Kayarath will be hereinafter referred to by us as "Mr. B." In this appeal, we are only concerned, as such, with Mr. B. and none of the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3

other four participants in the robbery-murder.

Based on the robbery-murder, Mr. B was charged in a second superseding indictment as follows: in count 1 he was charged with knowingly and willfully obstructing and affecting interstate commerce on November 8, 1994, by robbing employees of the Mandarin Chinese Restaurant and Lounge ("Mandarin Restaurant") in Wichita, Kansas, against their will by force and violence, in violation of 18 U.S.C. § 1951 (Hobbs Act) and 18 U.S.C. § 2; and in count 2 he was charged with carrying and using a firearm in that robbery and during the course thereof causing the death of a person, by murder, through the use of a firearm, in violation of 18 U.S.C. §§ 924(c)(1) and 924(j)(1) and 18 U.S.C. § 2.

Mr. B was found guilty by a jury on both counts, and, after his motion for a new trial was denied, he was sentenced to imprisonment for 240 months on count 1 and life imprisonment without release on count 2. Mr. B appeals his convictions.

On appeal, counsel raises basically two issues: (1) the district court erred in denying Mr. B's pre-trial motion to suppress his "confession," which, according to counsel, was the "fruit of the poisonous tree," i.e., the confession resulted from an "illegal arrest"; and (2) the district court committed plain error in its answer to a written question given the court by the jury during the course of its deliberations. Finding no reversible error, we affirm. Some background is in order.

Mr. B and the other four robbers were all living in the Wichita, Kansas area. At

trial, the government called as witnesses several "girlfriends" of the robbers who testified that they overheard Mr. B and the other four plan the robbery in question. One of the five robbers drove the get-away car, and did not himself enter the Mandarin Restaurant. The other four did enter the restaurant, two of the four carrying guns. It was the government's theory of the case that Mr. B and one of the others forced Mark Sun to open the cash register and then tied and bound him along with a waiter. Mark Sun, the waiter, and the two Sun daughters were then forced to lie down on the floor.[1] In this connection, Mark Sun, the co-owner of the Mandarin Restaurant with his wife, Barbara Sun, testified that he was forced to open the cash register and then tied and bound and forced to lie down on the floor. Also, the government called as its witness one of the four robbers who testified that he and Mr. B tied and bound Mark Sun. The driver of the get-away car also testified against Mr. B as a government witness.

It was the government's further theory of the case that the other two of the four robbers who entered the restaurant dragged Barbara Sun upstairs to the second floor and that one of the two shot and killed Barbara Sun when she could not open a safe. The gun used in the killing belonged to Mr. B. The four then fled the Mandarin Restaurant in a stolen get-away car, taking with them a relatively small amount of currency and some costume jewelry. The four entered a second get-away car driven by the fifth robber a

---

[1]Mark and Barbara Sun were born in South Korea and knew each other in that country. Each later emigrated to the United States and were married in Wichita, where they, together, owned and operated the Mandarin Restaurant.

short distance from the Mandarin Restaurant and the five successfully fled the scene.

Nearly three weeks later, Mr. B was arrested by authorities on November 29, 1994, in a house trailer located in Wichita. The authorities had a search warrant to search the trailer for drug activity therein. The authorities found "white powder" on a tray in the trailer, as well as a loaded shotgun. As indicated, Mr. B was in the trailer, along with others, and all were arrested and taken to police headquarters. After being advised of his *Miranda* rights, Mr. B admitted to participating in the robbery by tying up people and looking for currency and jewelry, though he denied that he shot and killed Barbara Sun. After the government rested its case, Mr. B called no witnesses and rested his case.

As indicated, prior to trial, counsel for Mr. B filed a motion to suppress the use at trial of Mr. B's confession made to an FBI agent, Dan Jablonski, who headed the Violent Crime Task Force in Wichita, which was investigating the robbery-murder. It was counsel's general position that Mr. B's arrest was without probable cause and thus illegal, and that the confession being the result of the illegal arrest was therefore inadmissable. Additional facts and circumstances surrounding his arrest become pertinent.

The Task Force, based on information acquired from various persons, was aware of Mr. B and his possible involvement in the Mandarin Restaurant robbery. The Task Force was also aware of another individual, a Mr. Ph, whom they suspected might be involved in some other robberies, if not involved in the robbery of the Mandarin Restaurant. To further its investigation, the Task Force on November 29, 1994,

established a surveillance of a "trailer" located at 3200 S.E. Boulevard in Wichita, the Task Force having information that the trailer was a hangout for Asian gang members, including Mr. Ph. During that surveillance, they saw two Laotian males leave the trailer and drive off in a red Chevy Blazer. Believing one of the individuals in the vehicle was Mr. Ph (it subsequently developed that they were mistaken in that belief), the agents followed and then stopped the Blazer. A consensual search of the vehicle disclosed quantities of cocaine which the occupants said they had obtained from Mr. Ph in the trailer and which they intended to distribute to others.[2] Based on that information, members of the Task Force obtained a warrant to conduct a search of the trailer.

This search warrant was executed about 3:00 p.m. on November 29, 1994, by Jablonski and other members of the Task Force. Mr. Ph answered the knock-at-the-door. After entering the trailer, the agents found cocaine in a tray and a loaded shotgun. Mr. B was in the trailer and he, and others in the trailer, were arrested, along with Mr. Ph, and all taken to police headquarters. After being given a *Miranda* warning, Mr. B was questioned about drug activities at the trailer, as well as the robbery of the Mandarin Restaurant and several other similar robberies. In this latter connection, Mr. B. later admitted, under questioning, his participation in the Mandarin Restaurant robbery,

---

[2]The two arrested in the red Chevy Blazer were Souphaphone Lang and Douangmala Lang. They were later charged with drug violations, and their convictions on the drug charges were affirmed on appeal. We reversed their convictions on the charges of carrying a firearm. *See United States v. Lang,* 81 F.3d 955 (10th Cir. 1996).

although denying that he shot Barbara Sun.

After hearing, the district court denied the motion to suppress. In so doing, the district court observed that Agent Jablonski, based on statements made to him by an informant, had already suspected that Mr. B was involved in the robbery of the Mandarin Restaurant, but that since there was "nothing more" known about the informant, his statement to the Task Force had "limited value in deciding whether probable cause existed [although] [i]t is, however, a factor to consider." Rather, in denying the motion to suppress the district court spoke as follows:

> Kayarath was found crammed into a small bedroom with 7 other people immediately after the agents discovered cocaine residue in the kitchen and a loaded .12 gauge shotgun under the couch. The Task Force knew from the Lang brothers' statements that a drug deal had occurred within the trailer earlier that day, and the agents had observed no one come in or go out of the trailer since that time.

We agree with the district court that the Task Force had probable cause to believe that cocaine was being distributed by persons in the trailer. The Task Force thereafter obtained a search warrant based on the fact that the two Laotian males in the red Chevy Blazer had cocaine in their possession shortly after leaving the trailer, where they said they had obtained the cocaine. Such, in our view, constitutes probable cause to believe that the occupants of the trailer were involved in drug distribution out of the trailer. Further, in our view, any possible error in arresting Mr. B is, under the circumstances, harmless error. *See Chapman v. California*, 386 U.S. 18 (1967); and *United States v.*

- 6 -

*Espinosa*, 771 F.2d 1382, 1415 (10th Cir.), *cert. denied*, 474 U.S. 1023 (1985). Evidence later adduced at trial was overwhelming that Mr. B did participate in the robbery. We refer especially to the testimony of Mark Sun and two of Mr. B's accomplices. Indeed, though Mr. B did not testify, counsel's defense, as he stated in closing argument to the jury, was that though Mr. B was guilty of robbery, he was not guilty of murder. And, as noted, the search of the trailer was pursuant to a search warrant.

Counsel also argues on appeal that the district court committed plain error in responding to a question from the jury during the course of its deliberation. In both counts 1 and 2, Mr. B was charged as a principal and as an aider and abettor under 18 U.S.C. § 2. In this latter connection, the district court, without objection, instructed the jury as follows:

INSTRUCTION NO. 32

Counts 1 and 2 of the indictment also charge the defendant with a violation of Section 2, Title 18 of the United States Code, which provides that: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

If you find that the United States has proved beyond a reasonable doubt that defendant personally committed each element of the crimes charged in Counts 1 and 2, you need not consider whether he violated 18 U.S.C. Section 2. On the other hand, if you find that defendant personally did not commit each element of either or both of the crimes, you must consider 18 U.S.C. Section 2. This is because a person may violate the law even though he or she does not personally do each and every act constituting the crime if that person "aided and abetted" someone else in the commission of the crime.

Before the defendant may be found guilty as an aider and abettor to the crime or crimes charged, the United States must prove, beyond a reasonable doubt, that someone committed each of the essential elements of the crime or crimes charged. In addition, the United States must prove beyond a reasonable doubt that the defendant:

1. Knew that the crime or crimes charged were to be committed or were being committed; and

2. Knowingly did some act for purpose of aiding, commanding, or encouraging the commission of the crime or crimes; and

3. Acted with the intention of causing the crime or crimes charged to be committed.

In other words, the United States must prove beyond a reasonable doubt that the defendant knowingly and willfully associated himself with the crime or crimes in some way as a participant--someone who wanted them to be committed--not as a mere spectator.

Merely being present at the scene of a crime or merely knowing that a crime is being committed or is about to be committed is not sufficient conduct for the jury to find that a defendant aided and abetted the commission of that crime.

After several hours of deliberation, the jury sent the following communication to the district court:

We request clarification of Instruction 32. The second paragraph reference 18 U.S.C. section 2, seems to conflict with items 1, 2 and 3 below, in that 1 below . . . seems to indicate that the defendant had to know that a murder either was going to be or was being committed.

Does the reference to crime or crimes mean the murder only or does it refer to "robbery and/or murder."

After discussion, the district court, with consent of the parties, answered that question as follows: "in answer to your question, the reference to crime or crimes refers to

- 8 -

the robbery and/or murder."

As indicated, there was no objection to instruction No. 32 nor was there any objection to the district court's response to the jury's question. Counsel necessarily must now argue that the court's answer constituted plain error. We do not agree.

We reject any suggestion that in order for Mr. B to be convicted as an aider and abettor to his accomplice's killing of Barbara Sun, Mr. B had to somehow know, in advance, that his accomplice was going to shoot and kill Barbara Sun. We are here concerned with a murder occurring during the course of a robbery.[3] In our view the jury was not misled by the district court's answer to the jury's question. And, again, in any event, the evidence shows quite clearly that Mr. B, who apparently at trial conceded, in effect, that he was involved in the robbery of the Mandarin Restaurant, aided and abetted

---

[3]In this general connection, the Supreme Court in *Schad v. Arizona,* 501 U.S. 624, 640-41 (1991) spoke as follows:

> At common law, murder was defined as the unlawful killing of another human being with "malice aforethought." The intent to kill and the intent to commit a felony were alternative aspects of the single concept of "malice aforethought." *See* 3 J. Stephen, History of the Criminal Law of England 21-22 (1883). Although American jurisdictions have modified the common law by legislation classifying murder by degrees, the resulting statutes have in most cases retained premeditated murder and some form of felony murder (invariably including murder committed in perpetrating or attempting to perpetrate a robbery) as alternative means of satisfying the mental state that first-degree murder presupposes.

his accomplice who shot and killed Barbara Sun. After all, it was Mr. B's gun used in the shooting of Barbara Sun, occurring at the time when Mr. B was ransacking the first floor of the Mandarin Restaurant. That, to us, is aiding and abetting.[4]

This is a tragic case. Mr. B, then age 21 years, has now been sentenced to 240 month's imprisonment on count 1 and a life sentence without parole on count 2. From the present record it appears that the driver of the get-away car and the robber who helped Mr. B tie and bind Mark Sun pled guilty to both robbery and murder. What has happened to the two who dragged Barbara Sun by the hair to the second floor and killed her, we do not know. There is, however, the suggestion in the present record that the government was seeking the death penalty against them. And, of course, the crimes they committed were violent and unprovoked, and decimated the Sun family.[5]

Judgment affirmed.

---

[4]Additionally, counsel suggests, mildly, that the evidence is insufficient to show that the robbery obstructed or otherwise affected interstate commerce. In this regard, Mark Sun testified that he bought products from outside the state and sold them at the Mandarin Restaurant and that many of his customers used credit cards for payment which resulted in out-of-state collections. Further, he stated that the robbery and murder ultimately caused him to close the restaurant and cease buying from out-of-state. Counsel recognizes that we have repeatedly held that the "affect" on interstate commerce need only be *de minimi*s to trigger the Hobbs Act. *See, e.g., United States v. Romero,* 122 F.3d 1334, 1339-40 (10th Cir. 1997), *cert. denied*, 118 S.Ct. 1310 (1998); *United States v. Bolton,* 68 F.3d 396, 399 (10th Cir. 1995), *cert. denied*, 516 U.S. 1137 (1996); and *United States v. Ziegler,* 19 F.3d 486, 489-90 (10th Cir.), *cert. denied*, 513 U.S. 1003 (1994). The present case meets that low *de minimis* standard.

[5]After oral argument of this case, counsel for the appellee filed a motion to correct a statement made by him at argument. That motion is granted. In connection therewith, counsel for the appellee also moved to supplement the record. That motion is denied.

Entered for the Court

Robert H. McWilliams
Senior Circuit Judge