UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 97-4355(L)
(CR-96-358-3)

United States of America,

                              Plaintiff - Appellee,

        versus

John Cordero,

                              Defendant - Appellant.

O R D E R

The court amends its opinion filed December 10, 1998, as follows:

On page 22, first line -- "No. 97-4221" is corrected to read "No. 98-4221."

                              For the Court - By Direction

                              /s/ Patricia S. Connor
                                      Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                    No. 97-4355

JOHN CORDERO,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                    No. 97-4423

JOHN CORDERO,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                    No. 97-4424

JOHN CORDERO,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                    No. 97-4580

JOHN CORDERO,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 97-4581

JOHN CORDERO,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 97-4611

JOHN CORDERO,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 97-4612

JOHN CORDERO,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 97-4613

JOHN CORDERO,
Defendant-Appellant.

2

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                  No. 97-4614

JOHN CORDERO,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                  No. 97-4690

JOHN CORDERO,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                  No. 97-4738

JOHN CORDERO,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                  No. 97-4960

JOHN CORDERO,
Defendant-Appellant.

3

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                             No. 97-4977

JOHN CORDERO,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                             No. 97-4978

JOHN CORDERO,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                             No. 97-4979

JOHN CORDERO,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                             No. 97-5014

JOHN CORDERO,
Defendant-Appellant.

4

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 98-4221

JOHN CORDERO,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 98-6004

JOHN CORDERO,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 98-6089

JOHN CORDERO,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 98-6102

JOHN CORDERO,
Defendant-Appellant.

Appeals from the United States District Court
for the District of South Carolina, at Columbia.
Joseph F. Anderson, Jr., District Judge.
(CR-96-358-3)

5

Submitted: October 30, 1998

Decided: December 10, 1998

Before MURNAGHAN and MICHAEL, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed in part and dismissed in part by unpublished per curiam
opinion.

_____

**COUNSEL**

John Cordero, Appellant Pro Se. Scarlett Anne Wilson, OFFICE OF
THE UNITED STATES ATTORNEY, Columbia, South Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In March 1997, John Cordero was charged in a multi-count, multi-
defendant indictment with conspiring to distribute controlled sub-
stances and with use of an interstate wire service to facilitate the com-
mission of a felony. Cordero, an attorney,[1] insisted on representing
himself at trial. Midway through the trial, however, he decided to
plead guilty to a superseding information charging him with a viola-
tion of the Hobbs Act, see 18 U.S.C. § 1951 (1994), involving the

_____

[1] Cordero is admitted to the bar in New York, but his bar fees have not
been paid since 1994.

6

armed robbery of a Dollar General Store with codefendant T.C. Jenkins. The district court accepted his guilty plea on July 11, 1997. During the Fed. R. Crim. P. 11 hearing, Cordero agreed that the government could prove the interstate commerce element of the offense and that he had intimidated at least one employee of the store.[2] He also admitted carrying a toy pistol. Pursuant to the plea agreement, Cordero waived his right to appeal his sentence and agreed to drop the interlocutory appeals he had pending in this court at the time.

Cordero subsequently tried several times to withdraw his guilty plea, but the district court denied his motions. He was sentenced to a term of 100 months imprisonment in December 1997. After he was sentenced, Cordero appealed from the judgment order. He has since moved for release pending appeal in this court.

During the course of the proceedings in the district court, Cordero filed over sixty motions and has noted appeals from the district court's denial of many of them. These interlocutory appeals[3] have been consolidated with Cordero's appeal from the final judgment order.[4] We now dismiss all the interlocutory appeals.

After consideration of the issues Cordero has raised on appeal, we deny his motion for release pending appeal and affirm the conviction. Because, in his plea agreement, Cordero waived his right to appeal his sentence, we dismiss that portion of his direct appeal in which he challenges his sentence.

_____

**2** The assistant manager of the store helped plan the robbery and let Jenkins and Cordero into the store after it closed. Two other employees were in the store at the time. At first, Cordero asserted that all three store employees planned the robbery, but he later admitted that at least one of them appeared to be surprised and afraid. Both employees were pushed to the floor, one of them was bound with duct tape, and cardboard boxes were placed over them.

**3** Nos. 97-4355, 97-4423, 97-4424, 97-4580, 97-4581, 97-4611, 97-4612, 97-4613, 97-4614, 97-4690, 97-4738, 97-4960, 97-4977, 97-4978, 97-4979, 97-5014.

**4** No. 97-4221.

Following entry of the judgment of conviction, Cordero noted appeals from district court orders denying his last motion to withdraw his guilty plea, his motion to vacate the judgment for lack of jurisdiction under Fed. R. Civ. P. 60(b)(4), and his motions to recuse Judge Anderson and to have his case reassigned to an African-American judge. We affirm each of these orders.[5]

I.

In his appeal from the judgment order, Cordero first claims that his conviction should be reversed and the superseding indictment dismissed because the proceedings below were lacking in fundamental fairness. As grounds for this claim, he alleges that the original indictment was based on false testimony before the grand jury, that his bail was excessive and racially motivated, and that his resulting unlawful detention before his guilty plea interfered with his right to self-representation and effective assistance of counsel by making it difficult for him to prepare for trial, thus rendering his guilty plea involuntary. Cordero alleges that he was denied access to legal materials, jury lists, addresses and phone numbers of witnesses, copiers, computers, and discovery materials, and that he was unable to make telephone calls or interview witnesses because he was in custody.

Cordero's guilty plea to the superseding information and the subsequent dismissal of charges brought in the indictment make his claim of false testimony before the grand jury moot. See Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990) ("[F]ederal courts may adjudicate only actual, ongoing cases or controversies."). In any case, a grand jury does not determine guilt or innocence and is free to consider all manner of evidence. See United States v. Calandra, 414 U.S. 338, 345 (1974) (validity of indictment not affected by character of evidence considered).

The allegation that Cordero was unlawfully detained before his guilty plea by the imposition of excessive bail is without merit. Bail is excessive and violates the Eighth Amendment when it is set higher than necessary to ensure the presence of the defendant. See United

_____

[5] Nos. 98-6004, 98-6089, 98-6102.

8

States v. Salerno, 481 U.S. 739 (1987); Stack v. Boyle, 342 U.S. 1 (1951). At the initial detention hearing, because Cordero was charged with a drug offense carrying a maximum sentence of more than ten years imprisonment, he was subject to an automatic presumption that detention was necessary to assure his appearance and the safety of the community. See 18 U.S.C.A. § 3142(e) (West Supp. 1998). Nonetheless, the magistrate judge found that Cordero was eligible for bond because he had complied with the conditions of a state bond for the previous ten months. Bond was set at $150,000. Unable to make bond in that amount, Cordero subsequently moved to reduce his bond. After a de novo hearing, the district court declined to reduce the bond, finding that Cordero's criminal record, lack of recent employment, refusal to take a drug test when arrested, and possession of a false identification card weighed against his release. Cordero contends that the bond was excessive because the district court was aware that he was indigent and could not make bond. He asserts that the court never addressed his argument in that regard. In fact, the court explicitly considered Cordero's inability to make bond. However, the fact that a defendant is financially incapable of satisfying the bail requirement does not violate the Eighth Amendment if the district court finds that the defendant is a flight risk or a danger to the community. See United States v. McConnell, 842 F.2d 105, 109-10 (5th Cir. 1988); United States v. Wright, 483 F.2d 1068, 1070 (4th Cir. 1973). Here, the court found that Cordero had not rebutted the presumption that he posed a danger to the community. Reviewing the district court's decision for abuse of discretion, we find none. See id. at 107 (standard of review).[6]

Finally, the record discloses that the district court appointed shadow counsel to assist Cordero and went to great lengths to ensure that Cordero would have access to legal resources, discovery materials, and supplies necessary for trial preparation even though he was in custody.[7]

---

[6] Cordero also points out that, after his guilty plea, he was released on $10,000 unsecured bond. However, at that time the government had agreed, as part of the plea agreement, not to oppose Cordero's release pending sentencing. Moreover, the drug charges had been dismissed.

[7] The district court arranged for Cordero to be transported to the courthouse two days a week so he could review all discovery materials

9

II.

Next, Cordero argues that the district court lacked jurisdiction over the offense because it occurred in South Carolina and not on land within the special territorial jurisdiction of the United States. His argument is without merit because the jurisdictional element was the effect of the robbery on interstate commerce. See United States v. Stirone, 361 U.S. 212, 218 (1960). Cordero conceded that the jurisdictional element could be proved at the Rule 11 hearing.

III.

Cordero also challenges the constitutionality of § 1951 on a number of grounds. First, Cordero claims that § 1951 is unconstitutional because it federalizes all robberies and regulates crime rather than commerce, while crime cannot be regulated under the Commerce Clause.[8] In reality, § 1951 does not attempt to regulate crime. It pun-

_____

(including grand jury testimony) in a secure setting. On the first day, after several hours, Cordero asked to be returned to the jail and that the district court defer its order concerning his transportation to the courthouse. The district court immediately had Cordero brought into the courtroom where Cordero stated that he did not need the discovery materials and would inform the court if he needed them in the future. On Cordero's suggestion, the court appointed a volunteer law student to obtain legal materials and make copies as requested by Cordero through his shadow counsel. Within a short time, the law student became concerned when she received messages from Cordero's wife and inquiries from Cordero about her membership in certain organizations, her relationship with shadow counsel, her telephone number, and her philosophical beliefs about racism in the legal system. The court then excused the law student and suggested that Cordero be sent to a pretrial detention facility in Atlanta, Georgia, that had a law library. Cordero refused because he wished to remain near his family in Columbia, South Carolina. The court then arranged for Cordero to use the law library in a state prison facility.

[8] A voluntary guilty plea forecloses an attack on the conviction based on antecedent non-jurisdictional errors. See Tollett v. Henderson, 411 U.S. 258 (1973). However, a guilty plea does not prevent an attack on the judgment based on alleged unconstitutionality of the underlying statute. See United States v. Palacios-Casquete, 55 F.3d 557, 560-61 (11th Cir. 1995).

10

ishes interference with commerce through extortion, robbery, or physical violence. See id. at 215. Moreover, it does not unconstitutionally intrude on the power of states to prosecute robberies. See United States v. Jarrett, 705 F.2d 198, 203 (7th Cir. 1983) (citing Bartkus v. Illinois, 359 U.S. 121 (1959) (no double jeopardy bar to state prosecution for robbery after acquittal in federal prosecution)).

IV.

Cordero makes a related claim that § 1951 is void for vagueness because a de minimis effect on interstate commerce has been held to be enough to create federal jurisdiction, thus making the robbery of any business potentially a federal crime. See United States v. Bolton, 68 F.3d 396, 399 (10th Cir. 1995) (jurisdictional element of the Hobbs Act can be met by a showing of a de minimis effect on commerce); United States v. Bailey, 990 F.2d 119, 125 (4th Cir. 1993) (threatened effect is sufficient).

In Cordero's view, expansive judicial interpretations of the jurisdictional element have rendered § 1951 impermissibly vague. Due process requires that a criminal statute define the offense with sufficient particularity that a person of ordinary intelligence has a reasonable opportunity to know what conduct is prohibited. See Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). We noted in Bailey that, in Stirone, the Supreme Court "made clear that the Hobbs Act is not to be narrowly applied." Bailey, 990 F.2d at 125. Rather, the Court held that "[the Hobbs] Act speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence." Stirone, 361 U.S. at 215. Consequently, circuit court decisions broadly interpreting the interstate commerce element do not impermissibly expand the statute's scope. Moreover, when free speech rights are not implicated, a defendant "`to whose conduct a statute clearly applies may not successfully challenge it for vagueness.'" See United States v. Bryan, 58 F.3d 933, 942 (4th Cir. 1995) (quoting Parker v. Levy, 417 U.S. 733, 756 (1974)). Cordero conceded at his Rule 11 hearing that the Dollar General Store is a business with stores in several states and that it operates in interstate commerce through ordering and purchasing items. He conceded that he robbed it. Because depletion of the store's assets constituted an

11

effect on interstate commerce, see Bolton, 68 F.3d at 399, his conduct fell squarely within that prohibited by § 1951.

V.

Next, Cordero argues that the de minimis test and the expansive interpretation of § 1951 used by the courts have been implicitly over-ruled by the Supreme Court's decision in United States v. Lopez, 514 U.S. 549 (1995). He recognizes that a number of circuits have held that Lopez does not affect § 1951, because the statute at issue in Lopez contained no jurisdictional element, while § 1951 does. See United States v. Farrish, 122 F.3d 146, 148-49 (2d Cir. 1997), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3555 (U.S. Feb. 23, 1997) (No. 97-1136); United States v. Atcheson, 94 F.3d 1237, 1241-42 (9th Cir. 1996), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 96-7644); United States v. Bolton, 68 F.3d at 398-99. Cordero's argument is based on his contention that § 1951 has no jurisdictional element. As explained above, we reject this contention. Consequently, we find his argument to be without merit.

VI.

Cordero also maintains that § 1951 is unconstitutional as applied to the facts in his case because, given that the money was taken with the help of the assistant store manager, Jasmine Saygidia, no robbery occurred. Cordero's claim goes to the adequacy of the factual basis for his guilty plea. In accepting a guilty plea, the district court must determine that the defendant admits conduct which is factually suffi-cient to constitute the alleged crime before accepting the plea. See Fed. R. Crim. P. 11(f). "Robbery" is defined as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession." 18 U.S.C. § 1951(b).

Cordero argues that nothing more than embezzlement took place because Saygidia had custody of the store's money and that there was no forced taking because she helped plan the theft. However, at the Rule 11 hearing, Cordero admitted that at least one of the store

12

employees was unaware of Saygidia's plan and that he intimidated that employee by his body language, forced her to the floor, and covered her with a box. In a staged robbery, the intimidation of innocent employees is enough to satisfy the element of threatened force, violence, or fear of injury required for a violation of§ 1951. See United States v. Skowronski, 968 F.2d 242, 248 (2d Cir. 1992). Consequently, we find that Cordero's admissions established an adequate factual basis for his guilty plea.

VII.

Next, Cordero asserts that his plea agreement, which is the standard plea agreement used in the District of South Carolina, is unenforceable because it is so one-sided as to be unconscionable. He contends that he entered into the agreement under duress in that he was incarcerated and was forced to plead guilty to obtain a temporary release on bond. We find his claim to be meritless. First, our review of the agreement reveals no unconscionable terms. Second, the record discloses that Cordero decided to enter a guilty plea in the middle of his trial, while representing himself. During the Rule 11 hearing, Cordero assured the district court that his decision to enter into the plea agreement was made voluntarily. The mere fact of incarceration does not create duress sufficient to invalidate a plea agreement. See United States v. Barrett, 514 F.2d 1241, 1243 (5th Cir. 1975) (incarceration in county jail with substandard conditions did not establish coercion in light of defendant's statements at Rule 11 hearing that plea was entered voluntarily).

VIII.

Cordero next contends that his guilty plea must be vacated because the district court failed to order, sua sponte, a competency hearing pursuant to 18 U.S.C. § 4241(a) (1994), before accepting his guilty plea. Cordero claims that the district court had reasonable cause to believe that he was mentally incompetent after a sidebar conference between his shadow counsel, Mr. Mobley, and the court during a pretrial motion hearing held on May 22, 1997. Mobley asked to approach without Cordero[9] and told the court he thought Cordero might be suf-

_____

[9] Cordero objected to being excluded from the sidebar conference. However, the conference was recorded, and a transcript was later provided to him.

13

fering from a personality disorder that could impair his ability to represent himself. Mobley reported that Cordero seemed "paranoid" and "completely antisocial" and that he was "constantly talking about everybody being out to get him." Mobley acknowledged that Cordero was lucid and able to understand the law and federal criminal procedure. The court responded by again cautioning Cordero about the pitfalls of self-representation. Cordero reiterated his intention to represent himself.

A district court must sua sponte hold a competency hearing if it has reasonable cause to believe that a defendant is not competent to stand trial or to plead guilty. See United States v. Mason, 52 F.3d 1286, 1289 (4th Cir. 1995); United States v. Hernandez-Hernandez, 904 F.2d 758, 760 (1st Cir. 1990). The test for competency is "whether the defendant `has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him.'" Mason, 52 F.3d at 1289 (quoting Dusky v. United States, 362 U.S. 402 (1960)). Whether there is reasonable cause to believe that the defendant is not competent is a question within the discretion of the district court. See id. We find no abuse of discretion here.

At the Rule 11 hearing, before accepting Cordero's guilty plea to the superseding information, the district court inquired into Cordero's competency and determined that he was competent to waive indictment and enter a guilty plea. The judge commented that, in addition to the Rule 11 colloquy, he and Cordero had had "innumerable colloquies over the past two or three months on various issues and motions."

On August 1, 1997, having received the transcript of the May 22, 1997, hearing, Cordero filed a third motion to withdraw his guilty plea based on newly discovered evidence, that is, Mobley's sidebar comments to the judge. Before the district court ruled on this motion, Cordero filed a motion indicating that he was about to begin a hunger strike and asking the court to direct the sheriff's department not to feed him. At this point, the district court ordered Cordero sent to the Federal Correctional Institution at Butner for a psychological evaluation. Cordero was found to be competent.

14

In a hearing held November 13, 1997, after Cordero had been evaluated and found competent, the district court addressed Cordero's motion to withdraw his guilty plea based on Mobley's comments in the sidebar conference. Cordero refused to answer when asked whether he believed himself incompetent to represent himself and presented no evidence on the issue. The court found that Cordero "is and always has been competent for the duration of these proceedings." In a written order, the court noted that its determination was based on "the court's many dealings with the defendant in the numerous hearings that have been conducted in this matter, the court's colloquy with the defendant at the Rule 11 hearing, and the medical report rendered by the medical officials at the Butner Federal Correctional Institution."

On December 5, 1997, the court addressed yet another motion to withdraw the guilty plea coupled with a request for another competency hearing. In this motion, Cordero suggested that he was presently competent to represent himself, but had not been competent when he entered his guilty plea. In a detailed oral ruling, the court noted that he had dealt with eighty-eight motions filed by Cordero and had held twelve hearings apart from the trial and guilty plea, all of which provided ample opportunity to evaluate his competency. The court noted that Cordero conducted himself capably during trial and "made the best opening statement I have heard in my 11 years as a judge." During the guilty plea colloquy the next day, the court "felt no concern whatsoever as to his competency to plead guilty at that time." Although the court was fully aware of the concerns Mobley had expressed in the sidebar conference, the court was also aware of "Mr. Cordero's abilities, his mental acuity, his knowledge of the rule of practice and procedure, his abilities to speak on his feet and try his case to a jury." These factors were appropriately considered by the district court, and the court acted within its discretion in not ordering, sua sponte, a competency hearing before accepting Cordero's guilty plea.

IX.

Cordero next argues that the factual basis for his guilty plea was inadequate because no direct effect on interstate commerce was established at the Rule 11 hearing. He cites dicta in Barrett v. United

States, 423 U.S. 212, 217 (1976), for the principle that only a direct effect on interstate commerce can satisfy the jurisdictional element in § 1951. However, as discussed above, "proof of a reasonably probable effect on commerce, however[ ] minimal" is sufficient to bring a crime within the jurisdiction of the Hobbs Act. United States v. Spagnolo, 546 F.2d 1117, 1119 (4th Cir. 1976). Further, depletion of a store's assets may constitute an effect on interstate commerce because the assets are used to purchase items from businesses in other states. See Bolton, 68 F.3d at 399. Although the government did not describe at the Rule 11 hearing the robbery's probable effect on interstate commerce, Cordero conceded that jurisdiction could be established. We find that the district court did not plainly err in so finding.

## X.

Cordero contends that the district court erred in denying several of his motions to withdraw his guilty plea. The plea agreement included an oral modification in which the government agreed to recommend that Cordero be released on an unsecured bond that day, Friday, July 11, 1997, and would be subject to house arrest, electronic monitoring, and random drug testing.[10] However, because of a procedural error at the Lexington County Detention Center where Cordero was being held, he was not released until Saturday evening. Cordero tested positive at his first random drug test on Monday, July 14, 1997. Cordero's

_____

[10] After summarizing the written plea agreement, the Assistant United States Attorney stated:

> MR. MOORE: That is the agreement . . . with one oral modification. We have agreed that we will recommend that[Cordero] be released on bond today. . . .
>
> We understand that he does not have a phone today . . . so what we have agreed to do is to agree to his release on home detention this afternoon with the understanding that he has to have a phone hooked up in his residence by Monday.
>
> MR. CORDERO: Tuesday, was the original --
>
> MR. MOORE: The phone bill has to be paid by Monday so that the phone can be hooked up by Tuesday and he can be on a monitor by Tuesday.

16

bond was revoked the same day, and he was returned to federal custody.

On July 16, 1997, Cordero moved to withdraw his plea alleging that the government had breached the plea agreement by failing to have him released on the day he entered his guilty plea. He also claimed that, after he was released, he had been subjected to a planned drug test rather than random testing as called for in the agreement. On July 22, 1997, he filed a supplemental motion claiming a violation of the Speedy Trial Act, 18 U.S.C. § 3161(c)(2) (1994), in that he entered a plea to the superseding information a few hours after it was filed. The district court denied both motions in a minute entry after a hearing on July 25, 1997. On August 1, 1997, Cordero moved to withdraw his guilty plea on the ground of newly discovered evidence, i.e., the sidebar conference between the district court judge and Mr. Mobley. This motion was denied on November 13, 1997, after a hearing at which the district court found that Cordero was and always had been competent. Finally, on October 29, 1997, Cordero moved to withdraw his plea based on "anticipatory breach," arguing that he expected the government to breach the plea agreement by failing to move for a substantial assistance departure at sentencing. This motion was mooted at sentencing when the district court found that Cordero had not provided substantial assistance and the government had not breached the agreement in failing to request a departure.

On appeal, Cordero addresses only the district court's denial of the July 16 and October 29 motions. We deem his claims concerning the other motions to have been abandoned. See Tucker v. Waddell, 83 F.3d 688, 690 n.1 (4th Cir. 1996).

While asserting that an inadvertent breach should have been reason enough to permit withdrawal of his plea, Cordero maintains that the government breached the plea agreement by deliberately engineering the delay in his release. He alleges that the government's motive was to prevent him from paying his phone bill on Friday afternoon as he was required to do under the plea agreement, so that electronic monitoring could be in place on the following Tuesday.

At the November 13, 1997, hearing, the following facts emerged concerning the delay. After he entered his guilty plea, federal mar-

17

shals returned Cordero to the Lexington County Detention Center where he had been housed to complete the procedures for release. While he was there, Richland County authorities picked him up and transported him to the Richland County Detention Center, even though charges pending against Cordero in Richland County had been dismissed pursuant to the federal plea agreement. Efforts on Saturday to get him released by the Assistant United States Attorney, the state Assistant Solicitor who had dismissed the Richland County charges, and the Clerk of Court for Richland County were unsuccessful until late in the day because officials at the Detention Center still had a writ for Cordero's transportation to state court (no longer valid) and were uncertain of their authority to release him. After the shift changed at the Detention Center, a second state Assistant Solicitor was successful in explaining to officials there that there was no reason to detain Cordero.

Following testimony from the federal and state prosecutors involved, Cordero stated at the hearing that he had obtained his own release with his wife's assistance by determining that the release order had been sent to the Lexington County Courthouse and arranging for a copy to be faxed to the Richland County Detention Center.**11**

Under Santobello v. New York, 404 U.S. 257, 262 (1971), a government promise which provides part of the inducement for a defendant's guilty plea must be fulfilled. If the prosecutor's promises are not carried out, the guilty plea is invalid because it is involuntary. See id. A defendant alleging a breach has the burden of proving the prosecutor's breach by a preponderance of the evidence. See United States v. Conner, 930 F.2d 1073, 1076 (4th Cir. 1991).

Here, the district court found that the government had not breached the agreement because it recommended Cordero's release and tried to obtain the promised release when Cordero was not released on schedule due to administrative error. We agree. The government carried out its promise to recommend Cordero's release. The unfortunate mix-up which delayed Cordero's actual release was not caused by a breach of the plea agreement. Moreover, Cordero provides no facts in sup-

_____

**11** Cordero did not mention this alleged turn of events at the July 16, 1997, bond revocation hearing before Judge Anderson.

18

port of his conclusory claim that the government delayed his release to prevent him from paying his telephone bill. Because we find no breach of the agreement, we find no merit in Cordero's related contention that the district court should have afforded him specific performance of the agreement by permitting him to remain on bond until he was sentenced.

Nor do we find persuasive his claim that his plea should have been vacated because he was subjected to a planned drug test on July 14, rather than a test scheduled according to the computer program normally used. The plea agreement called for Cordero to abide "by federal and state laws and [comply] with the terms and conditions of any bond executed in this case." One of the conditions of bond was that Cordero submit to random drug testing. Cordero was directed to come in for a test on Monday, July 14, and tested positive for cocaine. Cordero resisted bond revocation first by claiming that he had not violated the conditions of his bond because he had obtained and used cocaine in jail before his release on Saturday, July 12, but had not used drugs after his release. While accepting Cordero's account, the district court found that his admitted addiction and positive drug test weighed against allowing him to remain on bond because of the possibility that he might commit a crime to get money to buy drugs. We can discern no violation of the plea agreement or of the Fourth or Fifth Amendment in the district court's decision.

Finally, Cordero claims that the district court failed to rule on his motion, filed October 29, 1997, to withdraw his plea for anticipatory breach of the plea agreement. At a hearing on November 13, 1997, the district court heard Cordero's argument that he expected the government to refuse to move for a substantial assistance departure, see USSG § 5K1.1, p.s.,[12] and that such a refusal would violate the plea agreement. The government acknowledged, as it had in a written response to Cordero's motion, that it did not intend to ask for a departure, chiefly because Cordero had asserted his Fifth Amendment right not to testify when called as a government witness at T.C. Jenkins' trial. However, the government argued that the plea agreement afforded it full discretion to decide whether Cordero had provided

_____

[12] U.S. Sentencing Guidelines Manual (1997). Cordero was sentenced on December 15, 1997.

19

substantial assistance and that a remedy was available to Cordero only if he could make a substantial threshold showing that the government's decision not to request a departure was based on an unconstitutional motive. See Wade v. United States, 504 U.S. 181, 184-87 (1992). The district court took Cordero's motion under advisement.

At the sentencing hearing on December 15, 1997, the district court found that the government had a basis for its belief that Cordero had failed to fully cooperate as called for by the plea agreement and that its failure to move for a departure was "of no significance." The court also found that no unconstitutional motive was involved. The court then denied "[t]he motion to require the government to comply with the plea agreement and move for a downward departure." Cordero neither reminded the district court that he had moved to withdraw his plea, rather than moving to compel a departure motion, nor asked for a ruling on his motion to withdraw his plea. We find that the court impliedly found no basis for withdrawal of the guilty plea based on breach of the plea agreement.

XI.

Cordero makes a number of claims of error pertaining to his sentence. However, under the plea agreement, Cordero waived his right to appeal his sentence. A defendant may waive the right to appeal his sentence if the waiver is knowing and intelligent. See United States v. Broughton-Jones, 71 F.3d 1143, 1146 (4th Cir. 1995). A waiver is valid if the district court questions the defendant about it during the Rule 11 colloquy. See United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). A defendant may always appeal a sentence imposed in excess of the statutory maximum or a sentence based on a constitutionally impermissible factor such as race. See id. Here, the district court discussed the waiver provision with Cordero before accepting his guilty plea, and Cordero indicated that he understood the waiver and accepted it. The sentence was within the statutory maximum, and Cordero does not allege that the district court was influenced by unconstitutional errors in imposing sentence. Consequently, we find that review of the sentence is foreclosed.

XII.

Last, Cordero appeals the district court's denial of his motion for a change of venue on the ground that, as an African-American, he

20

could not receive a fair trial in the District of South Carolina because the state displays the confederate battle flag on the state capitol. Cordero's guilty plea mooted this issue and, therefore, we will not address it.

XIII.

In October 1997, Cordero requested that Judge Anderson be recused and that his case be reassigned to an African-American judge. His motions were denied by Chief Judge Houck after Cordero was sentenced. Cordero also moved to vacate the judgment order under Fed. R. Civ. P. 60(b)(4) for lack of jurisdiction. Judge Anderson denied both motions. Cordero's appeals from these post-judgment orders were consolidated with his appeal from the judgment order, as was his post-judgment appeal from the district court's denial of his last motion to withdraw his guilty plea. We have addressed the district court's denial of Cordero's attempts to withdraw his guilty plea and the jurisdictional issue. However, Cordero has not addressed the issues of recusal or reassignment in his brief, and has thus abandoned them. See Tucker v. Waddell, 83 F.3d 688, 690 n.1 (4th Cir. 1996). We therefore affirm all three orders.

XIV.

For the reasons discussed, we affirm the conviction. We dismiss that portion of the appeal which challenges the sentence. We dismiss as interlocutory the appeals of all orders apart from the judgment and commitment order. We affirm the district court orders to which Cordero noted appeals after the judgment of conviction was entered. We deny as moot Cordero's motion for release on bond pending appeal filed in this court. We grant Cordero's motion for a decision on consideration of his brief and the record below **13** and deny as moot Cordero's motion to bar the government from participating in oral argument. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

_____

**13** The government has not filed a brief.

21

No. 99-4221 - <u>AFFIRMED IN PART, DISMISSED IN PART</u>

Nos. 98-6004, 98-6089, 98-6102 - <u>AFFIRMED</u>

Nos. 97-4355, 97-4423, 97-4424, 97-4580, 97-4581, 97-4611, 97-4612, 97-4613, 97-4614, 97-4690, 97-4738, 97-4960, 97-4977, 97-4978, 97-4979, 97-5014 - <u>DISMISSED</u>

22