| Categories | Red Book | Blue Book |
|---|---|---|
| Federal and State Legislators | No | Yes |
| Misc. Information | Yes, medical charts; divorce procedures and motor vehicle laws of fifty states; degrees of kindred chart; national victim compensation list; etc. | Yes, list of recommended reading (e.g., Handbook of Legal Research in Mass.); extensive products and services listings; etc. |

## UNITED STATES of America

### v.

## Frederick CARDOZA.

## Criminal No. 95–10260–WGY.

United States District Court,
D. Massachusetts.

Jan. 16, 1996.

Denis M. King, Goulston & Storrs, Jeffrey M. Smith, Peters, Smith & Moscardelli, William A. Brown, John M. Moscardelli, Peters, Smith & Moscardelli, Boston, MA, for defendant.

Ralph F. Boyd, Jr., Office of the United States Attorney, Boston, MA, for U.S.

### *MEMORANDUM*

YOUNG, District Judge.

### I. Introduction and Issue Presented

This case raises a novel question which derives from Congress' passage of the Gun–Free School Zones Act and its subsequent analysis in *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Defendant Frederick "Freddie" Cardoza

("Cardoza"), a reputed gang member, was indicted and charged with two counts of violating 18 U.S.C. § 922(g)(1) (felon in possession of firearm and felon in possession of ammunition), one count of violating 18 U.S.C. § 922(x)(1)(A) (transfer of a handgun to a juvenile), and one count of aiding and abetting a violation of 18 U.S.C. § 922(x)(2)(A) (possession of a firearm by a juvenile). Cardoza moved to dismiss all four counts of the Indictment. After hearing, the Court denied the motion and the case proceeded to trial. The jury acquitted Cardoza of being a felon in possession of a firearm but convicted him of the remaining three counts. Cardoza's conviction requires a more formal explication of the grounds for denying his motion to dismiss. This memorandum attempts to provide it.

The motion to dismiss argues that certain sections of United States Code Title 18 are constitutionally invalid as beyond Congress' power to legislate under the Commerce Clause, Article I § 8, United States Constitution, as interpreted by the Supreme Court in *Lopez.*

Since its decision in early 1995, *Lopez* has been used by defendants across the country as a means of challenging the cons⸳, ıtionality of federal statutes allegedly violative of the Commerce Clause. Courts in other districts and circuits have consistently upheld the constitutionality of statutes such as 18 U.S.C. § 922(g) and others where challenged. *See, e.g., United States v. Hanna,* 55 F.3d 1456 (9th Cir.1995) (discussing 18 U.S.C. § 922[g][1] ); *United States v. Sage,* 906 F.Supp. 84 (D.Conn.1995) (discussing constitutionality of 18 U.S.C. § 228); *United States v. Bell,* 897 F.Supp. 1039 (M.D.Tenn.1995) (discussing 18 U.S.C. § 922[g] ).

This issue is one of first impression for this District, as the constitutionality of 18 U.S.C. § 922(g) has not heretofore been considered

by a court within this Circuit. In a case which raised legal issues similar to the case currently before this Court, however, the First Circuit recently held that Congress' enactment of 18 U.S.C. § 922(k)[1] did not exceed its authority to legislate under the Commerce Clause as interpreted in *Lopez. United States v. Martinez,* 71 F.3d 946 (1st Cir.1995).

## II. Analysis

### A. Constitutionality of 18 U.S.C. § 922(g)(1)

■ Count II of the Indictment is based upon 18 U.S.C. § 922(g)(1), the statute that makes it illegal for persons convicted of a felony to ship, transport, possess, or receive "any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."[2] The government alleges that Cardoza's possession of a certain round of ammunition violated the statute since the bullet was "in and affecting commerce." Cardoza, in rebuttal, relies on *Lopez* for his contention that the government misapplied the proper standard for measuring a proscribed activity's connection with interstate commerce.

In *Lopez,* a student was arrested and charged with possession of a handgun on the grounds of an El Paso, Texas high school, in violation of the Gun–Free School Zones Act of 1990 (the "Act"). Pub.L. No. 101–647, § 1702, 104 Stat. 4789, 4844 (1990) (codified as amended at 18 U.S.C. §§ 921, 921 note, 922, 924). Section 922(q)(2)(A), which codifies portions of the Act, makes it a federal offense to possess a firearm "at a place that the individual knows, or has reasonable cause to believe, is a school zone." 18 U.S.C.A. § 922(q)(2)(A) (West Supp.1995). The defendant appealed his conviction, and challenged the Act on the grounds that Congress had

---

**1.** 18 U.S.C. § 922(k) makes it a federal offense to transport, ship, receive, or possess in interstate or foreign commerce any firearm which has had the serial number "removed, obliterated, or altered."

**2.** In relevant part, 18 U.S.C. § 922(g)(1) states:

It shall be unlawful for any person who has been convicted in any court of, a crime punish-

able by imprisonment for a term exceeding one year;

\* \* \* \* \* \*

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

exceeded its Commerce Clause authority in enacting the statute. Following reversal of his conviction by the Fifth Circuit, *United States v. Lopez*, 2 F.3d 1342 (5th Cir.1993), the Supreme Court affirmed. The Court held that possession of a gun in a school zone was not an economic activity that substantially affected interstate commerce. *Lopez,* —— U.S. at —— – ——, 115 S.Ct. at 1633–34.

The *Lopez* Court devoted much of its opinion to reviewing the history of the Commerce Clause and explaining its operation as a restraint on Congressional authority. Three broad categories of activity were identified for Congressional regulation under the Commerce Clause: (1) the use of the channels of interstate commerce; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) those activities that have "a substantial relation to interstate commerce, i.e., those activities that *substantially affect* interstate commerce." *Lopez,* —— U.S. at —— – ——, 115 S.Ct. at 1629–30 (emphasis added, citations omitted).

Cardoza draws an analogy between § 922(q)(2)(A), the statute at issue in *Lopez* and § 922(g)(1), the statute under which Cardoza has been charged. Focusing primarily upon the third area in which *Lopez* indicates Congress may properly exercise its Commerce Clause power for support in challenging the language of § 922(g)(1), Cardoza argues that the proper measure of proscribed activity dictated by the *Lopez* decision is whether the activity "substantially affects" interstate commerce, not whether the activity merely "affects" interstate commerce. In other words, in Cardoza's opinion, *Lopez* stands for the proposition that in order for an activity to fall within Congress' regulatory power under the Commerce Clause, the activity must have a substantial, as opposed to a relatively trivial, affect upon interstate commerce. Based upon this supposed requirement that the activity "substantially af-

fect" interstate commerce, Cardoza asserts that Count II of the Indictment ought be dismissed, since neither the language of that count nor the language of § 922(g)(1) require proof that Cardoza's conduct have had a "significant affect[3] upon interstate commerce." Memorandum in Support of Defendant Frederick Cardoza's Motion to Dismiss (Docket No. 31) ("Defendant's Memorandum") at 2.

This argument is without merit. Since the Supreme Court's decision in *Lopez* there has been a virtual tidal wave of lawsuits brought by defendants seeking to raise the same challenges to the constitutionality of § 922(g) and other federal statutes as raised by defendant Cardoza in the instant case. So far, none has succeeded. In fact, every court that has addressed the question of § 922(g)'s constitutionality has upheld the statute as a proper exercise of Congressional power under the Commerce Clause. *See, e.g., United States v. Bolton*, 68 F.3d 396 (10th Cir.1995); *United States v. Shelton*, 66 F.3d 991 (8th Cir. 1995); *United States v. Collins*, 61 F.3d 1379 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 543, 133 L.Ed.2d 446 (1995).

The Supreme Court has previously ratified Congress' assertion of its Commerce Clause power in federal statutes affecting firearms possession. In *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), the Supreme Court ruled that the predecessor statute to § 922(g), 18 U.S.C. § 1202(a) was a valid exercise of Congress' Commerce Clause power. Section 1202(a) made it a federal crime for a felon to receive, possess, or transport in commerce or affecting commerce any firearm.[4] The *Bass* Court applied the term "in commerce or affecting commerce" to all three offenses (reception of a firearm, possession of a firearm, and transportation of a firearm) and concluded that the language of the statute only required proof "that the firearm received has previously traveled in interstate commerce."

---

**3.** The Court assumes that Cardoza meant to say "substantial effect" instead of "significant affect" in his Memorandum, thus keeping the terminology of his argument consistent with the Supreme Court's phrasing in *Lopez*.

**4.** The jurisdictional requirement of "in commerce or affecting commerce" contained in § 1202(a) is the same requirement found in § 922(g).

*Bass,* 404 U.S. at 350, 92 S.Ct. at 523.[5] In *Scarborough v. United States,* 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), the Supreme Court again reviewed § 1202(a) and reaffirmed its holding in *Bass,* declaring that the required connection between possession of the firearm and interstate commerce need only be minimal. *Scarborough,* 431 U.S. at 577, 97 S.Ct. at 1970. The Court determined that all that Congress intended to require as proof that the firearm had been in interstate commerce was that the firearm had, at some time, travelled in commerce. *Id.* at 575, 97 S.Ct. at 1969.

This Court holds that § 922(g)(1) is constitutional. It cannot be gainsaid that the *Lopez* court wrote, as Cardoza correctly notes, that "[w]e conclude, consistent with the great weight of our case law, that the proper test requires an analysis of whether the regulated activity 'substantially affects' interstate commerce." ——— U.S. at ———, 115 S.Ct. at 1630. However, the Achilles' heel of § 922(q), the statute analyzed in *Lopez,* was that the statute "contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.* at ———, 115 S.Ct. at 1631, *quoted in Bell,* 897 F.Supp. at 1041. Section 922(g)(1) does not suffer from such a flaw. Section 922(g)'s particular prohibition against possession of firearms or ammunition by convicted felons provides the necessary jurisdictional element since, according to the holding in *Scarborough, supra,* the minimum requirement to establish an effect on interstate commerce is that the firearm "have been, *at some time,* in interstate commerce." *Scarborough,* 431 U.S. at 575, 97 S.Ct. at 1969 (emphasis added). Similarly, the Ninth Circuit in *United States v. Hanna* noted that "section 922(g)'s requirement that the firearm have been, at some time, in interstate commerce is sufficient to establish its constitutionality under the Commerce Clause." *United States v. Hanna,* 55 F.3d 1456, 1462 n. 2 (9th Cir.1995) (citing *Lopez,* ——— U.S. at ———, 115 S.Ct. at 1625); *accord United States v. Bolton,* 68 F.3d at 399. Thus, despite defendant Cardoza's attempt to equate the two statutes, the Su-

preme Court's determination that § 922(q) is unconstitutional should not, and does not, taint the legality of § 922(g)(1).

**B. *Definition of Ammunition as it Applies to § 922(g)***

 In the alternative, Cardoza argues that even if *Lopez* fails to reach Count I, the felon in possession offense—a point now moot due to the jury's acquittal—Count II should be dismissed because Cardoza possessed only a single round of ammunition, thus failing to violate § 922(g). In support of this somewhat specious argument, Cardoza claims that the statutory definition of "ammunition" in 18 U.S.C. § 921(a)(17)(A), as well as the dictionary definition of "ammunition" both "require more than a single item [round of ammunition]." Defendant's Memorandum at 3 (citing 18 U.S.C. § 921(a)(17)(A) and Webster's Ninth New Collegiate Dictionary). Where there is ambiguity in the statute, Cardoza believes he deserves the benefit of the doubt, since his reading of the statute and definition of "ammunition" make it clear that Congress did not intend to proscribe the possession of a single round of ammunition. Defendant's Memorandum at 3–4 (citations omitted).

This argument misses the point. Despite Cardoza's plea that "a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed," Defendant's Memorandum at 4 (quoting McBoyle v. United States, 283 U.S. 25, 27 [1931]), he cites no authority, and the Court cannot find any, which supports his contention that possession of a single round of ammunition does not violate 18 U.S.C. § 922(g)(1). Ammunition is defined for the purposes of Title 18 as "ammunition or cartridge cases, primers, bullets, *or propellant powder designed for use in any firearm.*" 18 U.S.C.A. § 921(a)(17)(A) (West Supp.1995) (emphasis added). No amount of wordplay will contradict the plain meaning of the statute, an honest reading of which leads to the inexorable conclusion that a single nine mil-

---

**5.** The *Bass* decision and its analysis of the constitutionality of § 1202(a) was reviewed and cited

with approval by the Supreme Court in *Lopez. Lopez,* ——— U.S. at ———, 115 S.Ct. at 1631.

limeter bullet, such as that found on Cardoza's person on the night of July 15, 1995, constitutes ammunition for the purposes of 18 U.S.C. § 922(g)(1).

*C. Constitutionality of 18 U.S.C. § 922(x)*

 Counts III and IV of the Indictment charge a violation of 18 U.S.C. § 922(x)(1)(A), which makes it a federal crime for a person to sell, deliver, or otherwise transfer a handgun to a juvenile; and aiding or abetting a violation of 18 U.S.C. § 922(x)(2)(A), which criminalizes the possession of a firearm by a juvenile.[6] The gravamen of Cardoza's motion to dismiss is that § 922(x)(1)(A) and § 922(x)(2)(A) exceed Congress' authority to regulate commerce among the several states, since the statutes neither regulate commercial activity nor contain an interstate commerce requirement. Defendant's Memorandum at 1. Relying once again upon the Supreme Court's holding in *Lopez* for support, Cardoza argues that §§ 922(x)(1)(A) and 922(x)(2)(A) are similar to 18 U.S.C. § 922(q)(1)(A), the statute struck down in *Lopez*, because of their failure to include an interstate commerce nexus. For these reasons, Cardoza contends that Counts III and IV of the Indictment must be dismissed.

In enacting 18 U.S.C. § 922(x), Congress outlawed the sale, delivery, transfer of handguns to, and possession by an entire class of people, namely juveniles. As ably stated in the Government's memorandum, "[t]he 'class of activities' § 922(x) addresses—the receipt and possession of firearms by juveniles all over the country—has a substantial impact on interstate activities and commerce, regardless of whether handgun possession by, or transfer to, a juvenile in a particular instance has a direct nexus to interstate commerce or is merely local (intrastate)." Government's Opposition to Defendant's Motion

to Dismiss Indictment at 17 (citations omitted). Passage of this piece of legislation served effectively to regulate interstate commerce in handguns by affecting the supply and demand of firearms on a national scale: convicted felons who sold, delivered, or possessed handguns were guilty of a criminal act as well as juveniles who possessed handguns. This sort of supply-demand approach is useful to regulate a localized act which, if repeated on a large scale, has a substantial effect upon interstate commerce.

As *Lopez* demonstrates, handgun possession—particularly handgun possession by juveniles—is subject to federal regulation because, while one specific instance of possession may not by itself have the requisite substantial impact upon interstate commerce, it can "through repetition elsewhere, substantially affect ... interstate commerce." *Lopez*, —— U.S. at ——, 115 S.Ct. at 1634. This analysis tracks that used by the Supreme Court in *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 253–58, 85 S.Ct. 348, 355–59, 13 L.Ed.2d 258 (1964) (hotels and restaurants); *United States v. Darby*, 312 U.S. 100, 112–15, 61 S.Ct. 451, 456–57, 85 L.Ed. 609 (1941) (labor); and *Wickard v. Filburn*, 317 U.S. 111, 118–28, 63 S.Ct. 82, 86–91, 87 L.Ed. 122 (1942) (wheat). Upon reflection,[7] therefore, this Court imports the analytical approach used in *Heart of Atlanta Motel* and rules that Congress acted within its constitutional authority when it enacted 18 U.S.C. § 922(x), regulating the handgun market and excluding juveniles from participation in it.

### III. Conclusion

For the above reasons, this Court held that 18 U.S.C. § 922(g) and 18 U.S.C. § 922(x)

---

6. The relevant sections of 18 U.S.C. § 922(x)(1)(A) and § 922(x)(2)(A) are as follows:
(x)(1) It shall be unlawful for any person to sell, deliver, or otherwise transfer to a person who the transferor knows or has reasonable cause to believe is a juvenile—
(A) a handgun
 * * * * * *
(x)(2) It shall be unlawful for any person who is a juvenile to knowingly possess—
(A) a handgun

7. The Court reaches the conclusion here expressed after considerable reflection. In the actual event, while the Court denied Cardoza's motion to dismiss, it did so by importing into Counts III and IV an express interstate commerce requirement analogous to that found in § 922(g) and so charged the jury. Thus, the government in this case successfully proved an element—interstate transportation of the handgun—that was legally immaterial.

are constitutionally valid exercises of Congress' Commerce Clause power. Cardoza's Motion to Dismiss was accordingly *DENIED* in its entirety.