**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 29 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ADDAM W. SWAPP,

Defendant-Appellant.

No. 98-4061
(D.C. No. 96-CV-669-J)
(D. Utah)

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOHN TIMOTHY SINGER,

Defendant-Appellant.

No. 98-4127
(D.C. No. 97-CV-289-J)
(D. Utah)

---

**ORDER AND JUDGMENT** *

---

Before **BALDOCK** , **BARRETT** , and **McKAY** , Circuit Judges.

---

\*     These order and judgments are not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). These cases are therefore ordered submitted without oral argument.

Addam W. Swapp and John Timothy Singer separately seek certificates of appealability (COA) which would enable them to appeal from the district court's denial of their motions, filed pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct their convictions. We companion these two appeals for disposition because they are based on similar facts and raise similar issues. To obtain a COA, appellants must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Appellants have not met this standard because they have not shown that the issues they raised "are debatable among jurists of reason," that a court could resolve the issues differently, or that the questions deserve further proceedings. *See Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation omitted); *United States v. Sistrunk*, 111 F.3d 91, 91 (10th Cir. 1997). As a result, we deny their requests for COA and dismiss these appeals.

BACKGROUND

On January 16, 1988, a church building owned by the Church of Jesus Christ of Latter-Day Saints (LDS) in Marion, Utah (the "Stake Center"), was extensively damaged by a dynamite device which exploded inside it. Addam Swapp, Singer's brother-in-law, admitted that he had created the device, placed it in the building, and set it to explode. After setting the device, Swapp walked to a nearby family home (the "Singer property") and watched the explosion with family members. For the next thirteen days, federal law enforcement officers surrounded the Singer property in an attempt to force the Singer and Swapp family members to surrender. Swapp and Singer refused to leave the property or cooperate with the officers. Throughout this period, Swapp was observed walking around the Singer property with a rifle, and Singer, who is confined to a wheelchair, was observed brandishing a rifle from the window of the Singer property.

On January 28, 1988, Swapp left the home carrying a rifle. When agents attempted to arrest him, shots were fired from the Singer house. A federal agent, Lt. Fred House, was shot and killed. Two agents fired at Swapp, wounding him. Additional shots were fired from the Singer residence. A bullet struck another federal agent in the chest, but the bullet was deflected by his bullet-proof vest. Shortly thereafter, Swapp, Singer and the remaining family members surrendered.

Swapp, Singer and other family members were jointly tried in April 1988. The jury found Swapp and Singer guilty of attempting to kill officers and employees of the FBI, in violation of 18 U.S.C. § 1114; assaulting, resisting, opposing, impeding and interfering with FBI agents while they were engaged in the performance of their official duties, in violation of 18 U.S.C. § 111; and two counts of using a deadly and dangerous weapon or firearm during and in relation to these crimes of violence, in violation of 18 U.S.C. § 924(c). In addition, Swapp was convicted of knowingly and maliciously damaging and attempting to damage a building with an explosive, in violation of 18 U.S.C. § 844(i), and using a deadly and dangerous weapon under § 924(c) in connection with that crime. Swapp and Singer's convictions and sentences were affirmed on appeal. *United States v. Swapp*, Nos. 88-2433, 88-2435, 88-2516, 89-4090 and 89-4095, 1990 WL 299279 (10th Cir. Sept. 26, 1990) (unpublished disposition).

Swapp and Singer filed separate § 2255 motions in August 1996 and April 1997, respectively. The district court denied both motions, and denied appellants' requests for COA.

ANALYSIS

## I. Jurisdictional Element of Arson Charge

### A.

Swapp contends that, in light of the Supreme Court's interpretation of the Commerce Clause in *United States v. Lopez*, 514 U.S. 549 (1995), the federal court lacked jurisdiction to try him under 18 U.S.C. § 844(i), the federal arson statute, because there was insufficient evidence that the Stake Center was used in any activity that affected interstate commerce.[1] Section 844(i) provides:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property *used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce* shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both . . . .

18 U.S.C. § 844(i) (emphasis added).

---

[1] Swapp did not raise any of his challenges to the interstate commerce element of his § 844(i) conviction on direct appeal. Nevertheless, a statutory requirement that an activity be "in or affecting interstate commerce" is both jurisdictional and an essential element of the charge, *see United States v. Allen*, 129 F.3d 1159, 1163 (10th Cir. 1997), and challenges to jurisdiction may be raised for the first time on collateral review. *See United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993) ("jurisdictional issues are never waived and can be raised on collateral attack."). Thus, Swapp is not procedurally barred from raising these issues. *See United States v. Kunzman*, 125 F.3d 1363, 1364-65 (10th Cir. 1997) (treating challenge to interstate commerce element of statute as jurisdictional, thus not procedurally barred), *cert. denied*, 118 S. Ct. 1375 (1998).

In *Lopez* , the Supreme Court held that a federal statute prohibiting possession of guns in school zones did not regulate "an activity that substantially affects interstate commerce," and was, therefore an unconstitutional exercise of Congress' Commerce Clause authority.  514 U.S. at 559.  We have held that § 844(i) is a constitutional exercise of Congress' Commerce Clause authority because § 844(i), unlike the statute at issue in      *Lopez* , contains a "'jurisdictional element which . . . ensure[s], through case-by-case inquiry, that the [arson] in question affects interstate commerce.'"      *See United States v. Little*   , No. 96-4136, 1997 WL 767765 at **3 (10th Cir. Dec. 11, 1997) (unpublished disposition) (alteration in original) (quoting     *Lopez* , 514 U.S. at 561).

Swapp does not contend on appeal that § 844(i) is unconstitutional, but he argues that in order to sustain a conviction under § 844(i) after        *Lopez* , the government is required to show the building in question had a "substantial" effect on interstate commerce, rather than the "de minimis" effect previously required. As the district court recognized, however, our circuit has rejected such a heightened inquiry.  We held in     *United States v. Bolton*   , 68 F.3d 396 (10th Cir. 1995), that the  *Lopez*  decision "did not . . . require the government to show that *individual*  instances of the regulated activity substantially affect commerce to pass constitutional muster under the Commerce Clause."      *Id*. at 399; *see also United States v. Farnsworth*   , 92 F.3d 1001, 1006 (10th Cir. 1996) (recognizing

that *Lopez* did not change the minimal level of proof required for interstate commerce element of 18 U.S.C. § 922(g) firearm statute).

"In enacting section 844(i), Congress intended to exercise its full power under the Commerce Clause of the Constitution, . . . and intended for the statute to cover the destruction of church property." *United States v. Rea*, 169 F.3d 1111, 1113 (8th Cir.) (quotation and citation omitted; citing *Russell v. United States*, 471 U.S. 858, 860-61 & n.7 (1985)), *petition for cert. filed* (U.S. July 14, 1999) (No. 99-6136). When analyzing whether a conviction under § 844(i) satisfies the jurisdictional element, we must determine whether the property was "'used' in an 'activity' that affects commerce." *Russell,* 471 U.S. at 862. Courts have held, subsequent to *Lopez*, that a church building can be covered by § 844(i). *See Rea*, 169 F.3d at 1113-14; *United States v. Milton*, 966 F. Supp. 1038, 1041 (D. Kan. 1997).

In this case, the jury made a specific factual finding in its verdict that the Stake Center was used to "receive donated funds that were transmitted by mail or by wire in interstate commerce." Swapp R., Vol. I, Doc. No. 11, Ex. F. The government presented evidence that donations to the Stake Center, in excess of $1,000,000 annually, were deposited in a local bank. Each week, Stake Center officials reported the amount of these received donations to an out-of-state commercial data resource center in Omaha, Nebraska, which monitored and made

an accounting of the funds. After the Nebraska data resource center notified LDS church officials in Salt Lake City, Utah, of their accounting, LDS Church headquarters had the funds electronically wire transferred through the Federal Reserve Bank to a bank account of the LDS Church in Salt Lake City. These funds were invested and used for LDS Church expenditures all over the country. We agree with the district court that, under the standard that only de minimis effect on commerce need be shown, this evidence was sufficient to establish that the Stake Center was "used" in activities that "affected" interstate commerce, and therefore, the jurisdictional element of § 844(i) was satisfied. *Cf. United States v. Wiseman*, 172 F.3d 1196, 1214-16 (10th Cir.), *cert denied*, No. 99-5163, 1999 WL 496676 (U.S. Oct. 4, 1999) (holding that government established interstate nexus where stolen money could have been used to purchase goods in interstate commerce); *United States v. Zeigler*, 19 F.3d 486, 493 (10th Cir. 1994) ("A jury may infer that interstate commerce was affected to some minimal degree from a showing that the business assets were depleted.").

## B.

Swapp also argues that the jury was improperly instructed regarding his violation of § 844(i). Still relying on *Lopez*, he contends that the jury instructions were erroneous because they did not require the jury to find the Stake Center's activities had a "substantial" affect on interstate activities. As discussed above,

however, *Lopez* did not change the minimal level of proof required for the interstate commerce element of § 844(i).

Swapp next contends the instructions were in error because they did not require the jury to find that the Stake Center had an "actual" effect on interstate commerce. We have held, however, that only a potential effect on commerce is required to satisfy a jurisdictional interstate commerce element; thus, there was no error. *See Wiseman*, 172 F.3d at 1215-16; *United States v. Nguyen*, 155 F.3d 1219, 1228 (10th Cir. 1998), *cert. denied*, 119 S. Ct. 1086 (1999).

Finally Swapp complains that the jury was instructed that the interstate commerce element would be established as a matter of law if it found that the Stake Center was used in one of three activities suggested by the evidence. Swapp contends that by offering the jury its choice of the three circumstances presented by the evidence, the judge took from the jury the task of deciding whether the Stake Center was used in interstate commerce or used in any activity affecting interstate commerce. These instructions were not erroneous because the trial court did not direct the jury to make any finding on the interstate nexus element, but simply presented to the jury three alternatives suggested by the evidence, any one of which would have been sufficient to prove that element of § 844(i).

C.

Based on his contention that the Stake Center was not used in activities affecting interstate commerce, Swapp also argues that the federal agents were acting outside the scope of their federal jurisdiction while at the Singer property. He contends, therefore, that he was lawfully acting within his right of self-defense to resist unlawful arrest, citing *Bad Elk v. United States*, 177 U.S. 529 (1900), and that all of the charges against him should be dismissed. As discussed above, however, the federal agents involved in the siege were acting within the scope of their jurisdiction.

D.

Singer also claims that the United States lacked jurisdiction to try him because, in light of *Lopez*, there was insufficient evidence that the Stake Center was used in a way that substantially affected interstate commerce. He concedes that he was neither charged nor convicted of any violation of § 844(i), but argues he has a claim for relief because his trial was tainted by the court's lack of jurisdiction over his co-defendants. Singer's contention that his conviction should be set aside because of a claimed error in the convictions of his co-defendants is without merit. Moreover, as we have discussed, the trial court did have jurisdiction over all of the defendants and there was sufficient evidence to satisfy § 844(i)'s jurisdictional element.

## II. Double Jeopardy

Swapp contends, for the first time on appeal of the denial of his § 2255 petition, that his convictions under 18 U.S.C. § 924(c) violate his Fifth Amendment double jeopardy rights because the crimes of violence supporting his § 924(c) convictions involved the same conduct which supported his § 924(c) convictions. We have held that double jeopardy claims are jurisdictional and are not subject to waiver. *See Kunzman*, 125 F.3d at 1365 (treating § 2255 double jeopardy claim as jurisdictional and not subject to procedural bar); *United States v. Broce*, 781 F.2d 792, 797 (10th Cir. 1986) (holding that double jeopardy is an absolute inhibition on government's right to institute charges and is not subject to waiver); *but see United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996) (holding that § 2255 double jeopardy claim procedurally barred because not raised on direct appeal).

Therefore, assuming for purposes of this case that Swapp's claim is not waived or procedurally barred, his claim is, nevertheless, without merit. "We have previously rejected this double jeopardy challenge . . . because 'Congress may impose multiple punishment for the same conduct without violating the Double Jeopardy Clause if it clearly expresses its intent to do so,' and Congress did so in section 924(c)." *United States v. Shinault*, 147 F.3d 1266, 1279

(10th Cir.), *cert. denied*, 119 S. Ct. 459 (1998) (quoting *United States v. Overstreet*, 40 F.3d 1090, 1093, 1095 (10th Cir. 1994)).

### III. Convictions under § 924(c)

#### A.

Both Swapp and Singer contend that their convictions should be vacated because the trial court's jury instructions concerning "use" of a deadly or dangerous weapon or firearm in violation of § 924(c) erroneously defined "use" as interpreted by *Bailey v. United States*, 516 U.S. 137 (1995). The jury was instructed that they could find appellants guilty of using a firearm under § 924(c) if either "had the power and intention to exercise dominion or control" over the firearm or if the firearm "furthered the commission of the crime or was an integral part of the underlying crime being committed." Swapp R., Vol. I., Doc. No. 11, Exs. C and D (Jury Instruction Nos. 47 & 69). Appellants also complain that one of the § 924(c) instructions implied that they could be found guilty under § 924(c) if they either used or carried a firearm, even though they were only charged with "use" of a firearm. *See* Jury Instruction No. 48.

Neither Swapp nor Singer challenged the § 924(c) instructions at trial or on direct appeal. Subsequently, the Supreme Court ruled in *Bailey* that to sustain a conviction for using a firearm in violation of § 924(c), the government must prove active employment of the firearm during and in relation to the predicate crime.

-12-

*See Bailey,* 516 U.S. at 144; *United States v. Powell*, 159 F.3d 500, 501 (10th Cir. 1998), *cert. denied*, 119 S. Ct. 1088 (1999). A petitioner who has procedurally defaulted a claim by failing to raise it on direct review may only raise it collaterally if he can first demonstrate either cause and actual prejudice, or that he is actually innocent. *See Bousley v. United States*, 118 S. Ct. 1604, 1611 (1998).

The district court agreed that the § 924(c) instructions given at appellants' trial were erroneous in light of *Bailey,* but evaluated the error under our analysis in *United States v. Holland*, 116 F.3d 1353 (10th Cir. 1997), in which we held that a § 2255 petitioner established cause for failing to raise objections to § 924(c) "use" instructions where *Bailey* was decided after his direct appeal because *Bailey* overturned a longstanding and widespread interpretation of § 924(c). *See id*. at 1356. The district court concluded appellants failed to demonstrate that they were actually prejudiced by the erroneous instructions. The *Holland* analysis employed by the district court, however, was subsequently supplanted by *Bousley,* in which the Supreme Court ruled that *Bailey's* interpretation of § 924(c) was not so novel as to constitute "cause" to excuse a petitioner's failure to challenge the § 924(c) instructions on direct appeal, thus overruling our previously stated contrary view in *Holland*. *See Bousley,* 118 S. Ct. at 1611; *Powell*, 159 F.3d at 502.

The appellants do not assert that they have any cause to excuse their procedural default; thus, their *Bailey* claims are procedurally barred absent a showing of actual innocence of the § 924(c) charge. *See United States v. Leopard*, 170 F.3d 1013, 1016 & n.3 (10th Cir. 1999) (applying *Bousley* to *Bailey* jury instruction claims). To establish actual innocence, appellants "must demonstrate that, in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 118 S. Ct. at 1611 (quotations omitted). This means "factual innocence, not mere legal insufficiency." *Id*. Appellants never claimed actual innocence in their § 2255 motions; nor did they or the government address the application of *Bousley* to the *Bailey* claims, even though *Bousley* was decided more than six months before briefing in this case. Nevertheless, under the circumstances presented here, we do not see a need to remand these cases to the district court for an "actual innocence" determination because the evidence in the record supplies overwhelming evidence that appellants "used" deadly or dangerous weapons in violation of § 924(c) as interpreted by *Bailey*. *See Luster v. United States*, 168 F.3d 913, 915-16 (6th Cir. 1999) (holding remand for *Bousley* "actual innocence" analysis unnecessary where record supplied "overwhelming evidence of culpability").

Swapp was charged under § 924(c) with the use of a deadly and dangerous weapon (a bomb) in relation to the bombing of the Stake Center. Swapp admitted at trial to designing and building the bomb, placing it at the Stake Center, and bombing the Stake Center. *See* Supp. R., Vol. VII., at 1871, 1881-82. These admissions preclude any showing that he was actually innocent of the use of a bomb in violation of § 924(c). Swapp was also charged with use of a firearm and aiding and abetting in the use of a firearm in connection with the attempted murder of federal officers, and with using a firearm during and in relation to the crime of forcibly assaulting, resisting, opposing, impeding, or interfering with federal law enforcement agents.

Swapp admitted to carrying loaded pistols at all times during the thirteen-day siege with federal agents, and surveillance photographs taken during the siege showed Swapp outside the Singer property holding a rifle. *See id*. at 1909; Swapp R. Vol. I., Doc. No. 30, Exs. I and J. Swapp admitted to firing numerous shots from the Singer property during the siege, to firing shots in the direction of the federal agents who were putting up lights and speakers near the Singer property, and to aiming his rifle at a law enforcement helicopter flying over the property. *See* Supp. R., Vol. VII. at 1877, 1910, 1912. He admitted to carrying his loaded M-1 rifle and ammunition with him when he walked out of the

house on the morning of the arrest. *Id.* at 1923. Federal agents testified that Swapp turned his rifle toward them while they attempted to arrest him on January 28, 1988. *See id*., Vol. V. at 1045–46, Vol. VI. at 1127.

This evidence is clearly sufficient to constitute "use" under § 924(c). *See Bailey*, 516 U.S. at 148 ("The active-employment understanding of 'use' certainly includes brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire a firearm."). Therefore, Swapp cannot demonstrate that he is actually innocent of the two § 924(c) "use" firearm charges, and his *Bailey* claim is, therefore, procedurally barred. *See Powell*, 159 F.3d at 504.

C.

Singer confessed that he sat in his wheelchair at the window of the Singer property on the morning of January 28, 1988, armed with a .30 caliber carbine rifle, and that he fired all ten rounds from this rifle toward the federal agents and their dogs when they attempted to arrest Swapp. *See* Supp. R., Vol. VI. at 1604-06. Singer had two holsters strapped to his wheelchair in which he stated he kept the .30 caliber carbine rifle and a .357 magnum revolver. *See id*. at 1606-07. Singer's taped interview in which he made these confessions was played to the jury. *See id*. at 1610-11. A federal officer testified to spotting Singer armed with this rifle. *See id*. Vol. V. at 690. Ballistics evidence showed that seven of the bullets fired in the direction of the federal agents on the morning of January 28

were from Singer's rifle and one of the bullets fired from Singer's rifle was recovered from the coat of one of the federal agents who was struck during the shooting. *See id*. Vol. VI. at 1514-21. Given this evidence, Singer cannot demonstrate that he is actually innocent of the § 924(c) violations, *see Bailey*, 516 U.S. at 148, and his *Bailey* claim is, therefore, procedurally barred, *see Powell*, 159 F.3d at 504.

IV. Federal Crime Laboratories

Finally, based on newspaper articles describing an April 1997 report by the Inspector General of the Department of Justice that was critical of the analyses performed by certain specialized sections of the FBI's crime laboratory, Singer makes a conclusory, unspecified challenge to the quality of the scientific work performed by the federal crime laboratory during his trial, and argues that the district court should have held an evidentiary hearing to assess the reliability of such evidence. Singer's claims are entirely vague and speculative, and the district court properly denied an evidentiary hearing. "Conclusory allegations unsupported by specifics are insufficient to require a court to grant an evidentiary hearing [in a habeas petition]." *Hopkinson v. Shillinger*, 866 F.2d 1185, 1211 (10th Cir. 1989)

Accordingly, because we conclude that neither Swapp nor Singer have made a substantial showing of the denial of a constitutional right, we DENY their applications for COA and DISMISS these appeals.

Entered for the Court


James E. Barrett
Senior Circuit Judge